MATTHEW LAUGHLIN, and another, Assignees,

*vs.*

WILLIAM F. REED.

Penobscot.    Opinion May 22, 1896.

*Lien.  Attachment.  Insolvency.  Judgment.  Officer.  R. S., c. 70, §§ 33, 34, 35; c. 81, § 26; c. 91, §§ 34, 35, 42, 44.*

The enforcement of a mechanic's lien is not obnoxious to the policy of the insolvent law although the attachment may be within four months of the filing of the petition in insolvency.

An attachment made to enforce the lien created by R. S., c. 91, § 34, in favor of parties who furnish labor and materials, is not dissolved by proceedings in insolvency.

There is an obvious distinction between the special lien which a mechanic acquires under the statute by furnishing labor and materials in the erection of a building, and the general lien created by an ordinary attachment on mesne process. The first will be protected, while the latter may be dissolved, by proceedings in insolvency.

An assignee in insolvency stands in the place of the insolvent and, in absence of fraud, takes his estate subject to all equities, liens and incumbrances, whether created by operation of law, or by the act of the insolvent, which had a valid existence against the property in the hands of the insolvent.

When it satisfactorily appears, in an action to enforce a lien, that the claims designed to be covered by two separate counts in the same declaration are identical, *held;* that there is no merger of a lien claim with a non-lien claim.

The general owner of a building made a contract for labor and materials for its construction, and in answer to an action to enforce a lien claim therefor appeared in court to defend against the suit. There was no suggestion of insolvency of the defendant or that any other person had an interest in property. *Held;* that no other or further notice was required.

*Also;* that judgment having been rendered, followed by seizure on execution before the appointment of an assignee, a valid judgment was thereby rendered against the debtor; and that no further judgment was authorized or required in order to make the property attached available to satisfy the execution.

The building in this case stood on leased land and therefore deemed personal property for the purpose of attachment. It was situated in an unincorporated place and entirely surrounded by unorganized townships, none of which had an officer to record the attachment. *Held;* that the case did not fall within the precise terms of the statute authorizing a record of an attachment; and that the attaching officer could himself, or by a keeper, take and retain possession and control of the property attached.

ON REPORT.

This was an action of trespass brought by the assignees in insolvency of Frank W. Lincoln against the defendant, as sheriff of Penobscot County, for the act of his deputies in attaching, seizing on execution, and selling a certain building situated on leased land in Indian Township, Number 4, known as the Frank W. Lincoln Hotel, and owned at the time of the attachment by Lincoln. The suit in which said hotel was attached, was in an action brought in the Bangor Municipal Court by James M. Davis, against said Lincoln to enforce a lien claim, which said Davis claimed to have on said building for labor performed and materials furnished in its erection. The building was situated in an unorganized township having no clerk or recording officer, and entirely surrounded by unorganized townships, none of which had a recording officer. The building was personal property; hence it was claimed by the defendant that there was no place in which an attachment of it could be recorded. Lincoln was in possession, occupying said building as a hotel, and the officer, in order to retain possession and preserve his attachment, placed a keeper in possession of said building with Lincoln's consent. The case was entered in said

court, tried, and on the third Monday of December, 1894, judgment was rendered for the plaintiff for $90.06, and costs. From this judgment the defendant took an appeal to the Supreme Judicial Court.

The declaration contained averments, as stated in the opinion, that the suit was brought to enforce a lien. On January 1st, 1895, said Lincoln filed his petition in insolvency, and the plaintiffs were duly appointed assignees March 13, 1896. The filing of the petition was before the sitting of the court to which the appeal was taken; it was not controverted that, at the time Lincoln filed his petition in insolvency, the property was held by virtue of an attachment in a suit to enforce a lien claim. The defendant, Lincoln, failed to prosecute his appeal in the Supreme Judicial Court, also failed to suggest and plead his insolvency ; and on the 6th day of February, 1896, Davis obtained a judgment, on which, after a hearing on costs, execution was issued. The execution issued and seizure on the execution was made March 20, 1896, and after due notice the building was sold by the officer on March 27, 1896,—all being done within thirty days from the rendition of judgment and issuing of the execution.

The other facts are stated in the opinion.

*Matthew Laughlin,* for plaintiffs.

*F. J. Martin and G. H. Morse,* for defendant.

SITTING: PETERS, C. J., FOSTER, WHITEHOUSE, WISWELL, STROUT, JJ.

WHITEHOUSE, J. The plaintiffs as assignees in insolvency of Frank W. Lincoln brought this action of trespass against the defendant, as sheriff of Penobscot County, for the act of his deputy in attaching, seizing, and selling a certain building situated on leased land in Indian Township No. 4, known as the "Lincoln House" and at the date of the attachment owned by Frank W. Lincoln. The attachment was made November 21, 1894, in a suit brought against Lincoln by James M. Davis to enforce a mechanic's lien, which Davis claimed to have on the building for labor

performed and materials furnished in its erection, the balance claimed being $176.36. The declaration on the account annexed to the writ, specifying the items of labor and materials, contains an averment that the suit was "brought to enforce the plaintiff's lien on said building," previously described in the writ. It is stated in the officer's return that the attachment was made for the purpose of enforcing the plaintiff's lien claim on the building, and that personal service was at the same time made on the defendant Lincoln, who was the debtor and the owner of the building. The writ was duly entered in the Municipal Court of Bangor to which it was made returnable, the defendant appeared and answered, and judgment was rendered for the plaintiff on the third Monday in December for $90.06 and costs of suit. The defendant appealed from this decision, but failing to prosecute his appeal, the judgment of the lower court was affirmed in the Supreme Court on the sixth day of February, and execution duly issued thereon on the fourth day of March, 1895. On this execution is a memorandum describing the building attached and stating that it was "for the purpose of enforcing plaintiff's lien on said hotel." By virtue of this execution the officer seized and sold the hotel, after due notice, stating in his return that it was the same building attached on the original writ to enforce the creditor's lien claimed thereon.

In the meantime, however, Frank W. Lincoln, the defendant in that suit, was duly adjudged an insolvent debtor on the first day of January, 1895, on his own petition, and the plaintiffs as his assignees received the usual assignment, vesting in them all the property and estate of the debtor . . "although the same was then attached on mesne process as the property of the debtor." Thereupon, these plaintiffs invoked the succeeding clause in § 33, c. 70, R. S., declaring that, "such assignment dissolves any such attachment made within four months . . preceding the commencement of such proceedings"; and contend that even if the lien creditor Davis had, in other respects, observed the requirements of the statute for the preservation of his lien, his attachment was dissolved and his lien discharged by force of these proceedings in insolvency.

This position of the assignees is clearly untenable. The bene-

ficent provisions of our statutes in favor of mechanics and material men are not in conflict with the spirit and purpose of the insolvent law, because no injustice will be done to any creditor, or class of creditors, by the enforcement of a mechanic's lien.    There is an obvious distinction between the lien which a mechanic acquires under the statute by furnishing labor and materials in the erection of a building and a general lien created by the ordinary attachment on mesne process.    "In the latter case, an attaching creditor has no claim for preference over other creditors except by his attachment; whereas, when a mechanic obtains a lien under the statute, and relying thereon, increases the value of the land by erecting buildings thereon, he has a strong equitable claim for re-imbursement to the extent of the value of his labor and materials furnished for building; and in this respect he has a marked preference over other creditors of the owner of the land, who had trusted to the personal credit of their debtor." *Foster* v. *Stone*, 20 Pick. 542.    The operation of the lien law is analogous to that of the clause in § 52, c. 70, R. S., declaring valid any loan of actual value made in good faith upon security taken at the time; because such security is only "equivalent to the additional value which the creditor has by this means given to the property of the debtor, and therefore does not diminish the assets of the latter applicable to the payment of his pre-existing debts." *In re, Coulter*, 5 Nat. Bank. Reg. 64; Phil. on Mech. Liens, 299.

Again, it is an uncontroverted and familiar principle that, in the absence of fraud, the assignee in insolvency stands in the place of the insolvent debtor and takes only the property which he had subject to all equities, liens or incumbrances, whether created by operation of law or by the act of the insolvent, which had a valid existence against the property in the hands of the insolvent.    *Yeatman* v. *Sav. Inst.* 95 U. S., 764; *Newbert* v. *Fletcher*, 84 Maine, 408; *Hutchinson* v. *Murchie*, 74 Maine, 187.

Reasoning from these two postulates we reach an easy solution of the apparent difficulty arising from the unqualified provision in § 33, c. 70, R. S., that all attachments are dissolved by proceedings in insolvency.    The assignees took the property subject to the

strong equities attaching to a mechanic's lien, the security of which, as we have seen, is in no way obnoxious to the policy of the insolvent law; and the insolvent statute should not be construed to destroy those equities by dissolving the lien, unless such a construction is imperatively demanded by its terms when considered in comparison with the statutes under which the mechanic's lien is acquired.

Section 34 of c. 91, R. S., provides that the lien shall be dissolved unless a suit to enforce it is commenced within ninety days after the last labor is performed; but section 35 of the same chapter proceeds to declare that . . . "when a warrant in insolvency issues against his estate within the ninety days and before the commencement of a suit, the action may be commenced within sixty days after notice given of the election or appointment of the assignee, or the revocation of the warrant, and the lien shall be extended accordingly." This amendment to the Revised Statutes of 1871 was enacted in 1881, three years after the passage of the insolvent law; and it is an established rule that acts in pari materia are to be taken together and construed as one law. Thus these several provisions reflect light upon each other, and the whole should be so expounded if practicable, as to avoid any contradiction or inconsistency and give some effect to every part. *Newbert* v. *Fletcher*, 84 Maine, 408; *Gray* v. *Co. Com.* 83 Maine, 429; Endlich on Int. of Statutes, 40–41; Sedgwick on Stat. Const. 238.

But there seems to be no necessary conflict between the statutes above quoted. They may be naturally construed so as to leave a clear and definite field of operation for each. The provision in § 33, c. 70, is restricted to general attachments by which liens are *created*; while § 34 of c. 91 expressly relates to liens *created* by the *act* of furnishing labor and materials and *enforced* by attachment, affording at the same time an obvious implication that all such liens are to be upheld against a warrant in insolvency.

The lien in favor of the plaintiff in the action *Davis* v. *Lincoln*, if otherwise preserved, was protected against the operation of the

insolvent law; and as no suggestion of the defendant's insolvency was made on the record, the action went to judgment in the regular course of procedure; and, if otherwise justified, the officer was authorized to seize and sell the building on the execution.

But the plaintiffs still insist that the lien was dissolved by the failure of the creditor to observe the statute requirements and legal formalities necessary to preserve and enforce it.

In the first place, it is objected that the second count in the writ is for an independent cause of action, and not for the items specified in the first count, and hence that the lien claim is lost because merged in a judgment with a non-lien claim. But this objection cannot be sustained. Section 42 of c. 91, R. S., provides that "the declaration must show that the suit is brought to enforce the lien; but all other forms and proceedings therein shall be the same as in ordinary actions of assumpsit." It has been seen in the case at bar that the first count declaring on the account annexed, specifying the labor and materials furnished, concludes with the following averment: "and this suit is brought to enforce the plaintiff's lien for the same upon said building above described." This general statement that the "suit" is brought to enforce the lien, necessarily applies to the second count for money had and received as well as for the first count; and inasmuch as evidence might be admissible under the second count to support a lien claim, there would seem to be no substantial basis for the assertion that this count is for a non-lien claim. Each count is aided by the general averment that the "suit" is brought to enforce the lien and must be construed with reference to it.

Furthermore, it is a reasonable inference from the whole record that the second count was perfunctorily inserted in obedience to the common practice of providing against possible contingencies in the introduction of the evidence; that it was only intended to cover the identical claim set forth in the first count, and that the judgment was in fact rendered on evidence relating to the items in the first count. The money count is for "another sum of $176.36" being the exact sum named in the first count. The "suit" embracing this count was brought to enforce the plaintiff's lien, and

although there appears to have been a trial in the municipal court, there is no suggestion that the plaintiff in fact had any other claim against Lincoln except that specified in the first count. Finally, it is stated in the record of the court that the action was "upon account annexed to enforce lien as set forth in the writ," no mention being made of the money count and the judgment was for only $90.06. It thus satisfactorily appears that the claims designed to be covered by the two counts are identical, and that there was no mingling of a lien claim with a non-lien claim.

The same objection was made by counsel and overruled by the court in *Parks* v. *Crockett*, 61 Maine, 489.

It is also claimed that the lien was lost because there was no judgment rendered for a lien on the building described. But it has been seen that the defendant, in *Davis* v. *Lincoln*, was the general owner of the building, made the contract for the labor and materials, and in answer to the summons served upon him duly appeared in court in defense of the suit. There was no suggestion that any other person had any interest in the property. No other notice was authorized or required. Under these circumstances a valid judgment was rendered against the defendant Lincoln, and no further judgment was authorized, or required, in order to make the property attached available for the satisfaction of the execution issued on the judgment in that suit. R. S., c. 91, §§ 42 & 44; *Martin* v. *Darling*, 78 Maine, 78; *Farnham* v. *Davis*, 79 Maine, 282; *Byard* v. *Parker*, 65 Maine, 576; *Parks.* v. *Crockett*, 61 Maine, 489.

But in the fourth count in their writ, these plaintiffs finally contend that in any event the defendant is liable as a trespasser ab initio, because he unnecessarily placed a keeper in charge of the building to preserve the attachment in *Davis* v. *Lincoln*, and also because the keeper was an unsuitable person for the trust by reason of his intemperate habits.

Section 26 of Chapter 81, R. S., provides that "when personal property is attached, which by reason of its bulk or other special cause cannot be immediately removed" the officer may record the attachment in the office of the clerk of the town in which the

attachment is made; and such attachment is as effectual and valid, as if the property had remained in his possession and custody. But when the attachment is made in an unincorporated place, it shall be filed and recorded in the office of the clerk of the oldest adjoining town in the county.

It is not in controversy that the building in question, standing on leased land, must be deemed personal property for the purpose of attachment; and it was not only situated in an unincorporated place, but was entirely surrounded by unorganized townships none of which had a recording officer. The case, therefore, does not fall within the precise terms of the statute authorizing a record of the attachment.

Prior to the enactment of this statute, in order to perfect and preserve an attachment of such personal property, it was the duty of the officer, either by himself, or by a keeper appointed by him for that purpose, to " take and retain possession and control of the property attached, or have the power to take immediate control." *Weston* v. *Dorr*, 25 Maine, 176; *Gower* v. *Stevens*, 19 Maine, 92; *Wentworth* v. *Sawyer*, 76 Maine, 434; *Brown* v. *Howard*, 86 Maine, 342. But as against the defendant Lincoln or the plaintiff in this case, who took only his interest in the property, it was not indispensible, in order to preserve the attachment in question, that the officer or his agent should remain constantly in the actual possession. *Hemmenway* v. *Wheeler*, 14 Pick. 408; *Ashmun* v. *Williams*, 8 Pick. 402. In general, it may be said that it must be such a custody as to enable the officer to retain and assert his control over the property so that it cannot probably be taken from him by a bona fide purchaser or subsequent attaching creditor. Drake on Attach. § 423; *Hemmenway* v. *Wheeler*, supra.

But on the contrary, even if the operation of this statute could be enlarged by construction, in furtherance of the manifest purpose of it, so as to authorize the record of such an attachment in the oldest neighboring town, in case there was no town actually adjoining, still it would not deprive the officer making the attachment of the right to take actual possession of the property, if reasonably necessary for its preservation, although the probability

of its forcible removal might be very remote.   As the "minister of the law" he is charged with a duty on the one hand, to make the property available for the satisfaction of the creditor's claim, and in another event is made accountable for it to the debtor.   Thus his relation to the thing attached becomes such as to invest him with a special property in it, which enables him to protect the rights he has acquired independently of both debtor and creditor. Drake on Attach. § 290; *Braley* v. *French*, 28 Vt. 546; *Wentworth* v. *Sawyer*, supra.

In view of the situation of this building in the wilderness, and of the evidence tending to show that disorderly persons frequented the place and might naturally be expected to do so, it does not appear to have been unreasonable, in any event, to have a keeper appointed to retain possession and control of the property, and thus preserve it from destruction and protect it against trespassers and consequent injury and damage.

It also appears that the person appointed by the sheriff to act as keeper, was selected upon the express recommendation and request of Frank W. Lincoln, the owner of the building, and that he was a competent person for that trust.   It is not alleged in the writ that he committed any specific act of trespass, and it is not satisfactorily shown that he was responsible for the slight damage occasioned by the injury to a door.   But there is a strong preponderance of evidence that he discharged his duty with reasonable efficiency and fidelity.

The plaintiffs fail to establish any liability on the part of the defendant under the law and the evidence applicable to the fourth count in their writ.

*Judgment for the defendant.*