[Civ. No. 4799.   Second Appellate District, Division One.—June 29, 1925.]

## KATE COLVER et al., Appellants, v. W. B. SCAR-BOROUGH COMPANY (a Corporation) et al., Respondents.

[1] EXECUTION—SALE OF PROPERTY—PROCEDURE TO SET ASIDE.—The proper procedure to set aside a sale under execution, excepting where some special facts are alleged which may create jurisdiction in a court of equity, is by motion to vacate the sale in the action under which it is claimed any irregularities occurred.

[2] ATTACHMENT—LEVY UPON APARTMENT HOUSE FURNITURE—SUFFI-CIENCY OF TAKING INTO CUSTODY.—Subdivision 3 of section 542 of the Code of Civil Procedure, requiring that "personal property, capable of manual delivery, must be attached by taking into custody," is substantially complied with in the case of the attachment of furnishings and furniture of an apartment house containing many rooms, where the attaching officer enters the hallway of the apartment house and the rooms therein occupied by the attachment debtors, who are told of the attachment, and a copy of the writ is served upon one of them, and, although with the exception of the hallways and the apartment occupied by the attachment debtors, the rooms and the various apartments are all closed or locked, and the officer does not enter them, a keeper for the sheriff is left in charge, who remains continuously on

---

1.  See 11 Cal. Jur. 89; 10 R. C. L. 1320.
2.  See 15 Cal. Jur. 1031; 17 R. C. L. 188.

duty as such keeper from the date when the levy is made to and including the sale of said personal property.

[3] EXECUTION—LEVY UPON PERSONAL PROPERTY—FIXTURES—FIND-INGS—EVIDENCE.—In this action to set aside a sheriff's sale of personal property, the finding of the court "that said property constituted the furnishings and fixtures of the houses in which it is located" was not open to criticism based upon the ground that "fixtures" are not personal property, where the record showed conclusively that the term "fixtures" was intended solely as a description of the furniture and furnishings included in the attached property as disclosed by the sheriff's return on the levy and the sale.

[4] ID.—IRREGULARITIES IN SALE—WAIVER BY DEBTORS.—In this action to set aside a sheriff's sale of the furniture and furnishings of an apartment house and other near-by cottages, the court held not err in finding that at the time of sale "some of the property was in the immediate presence of the parties and some of the doors of the houses were open"; and any irregularities in the sale, based upon the facts that the property was sold *en masse* and that all the articles were not in view of the bidders at the sale, were waived by defendants by their acts in removing a part of the property from the premises, in causing certain of the apartment doors to be kept locked, and in bidding at the sale, and by the act of their attorney, who was present at the sale, in expressly assenting thereto.

[5] ID.—RETURN OF LEVY—KNOWLEDGE OF DEPUTY.—A deputy of the sheriff in office, although having no personal knowledge of the facts, is competent to make a return of a writ of attachment.

[6] JUDGMENT—OPINIONS OF JUDGE—FINDINGS.—Opinions declared by the judge during the course of the trial or thereafter are not binding; but the findings and judgment, although contrary to previously expressed opinions, are conclusive.

[7] ID.—OMISSIONS IN FINDINGS—IMMATERIAL ISSUES—ADMITTED ALLEGATIONS.—Reversible error cannot be predicated upon the omissions to make findings, where the findings as made upon the material issues of the pleadings are ample to support the judgment in favor of defendant, and any omitted findings which might be made on other issues, however favorable to plaintiff's contentions, would not affect the conclusion of law made by the trial court from the findings as a whole; neither is it error to

5.  See 23 Cal. Jur. 322.

6.  See 24 Cal. Jur. 924; 26 R. C. L. 1086.

7.  See 24 Cal. Jur. 947.

omit to make findings as to matter alleged in plaintiffs' complaint, where the allegations in the answer of the defendant are, in effect, but an admission of plaintiffs' allegations.

(1) 23 C. J., p. 682, n. 41.    (2) 23 C. J., p. 691, n. 62.    (3) 23 C. J., p. 691, n. 62.    (4) 23 C. J., p. 667, n. 67.    (5) 6 C. J., p. 247, n. 47.    (6) 38 Cyc., p. 1950, n. 90.    (7) 4 C. J., p. 1059, n. 5.

APPEAL from a judgment of the Superior Court of Los Angeles County.   John L. Fleming, Judge.   Affirmed.

The facts are stated in the opinion of the court.

Wm. M. Moore, Jr., Arthur Lasher and J. W. Hocker for Appellants.

Scarborough & Bowen, Edward T. Bishop, County Counsel, and J. A. Tucker, Deputy County Counsel, for Respondents.

HOUSER, J.—Plaintiffs brought a suit against the several defendants, W. B. Scarborough Company, I. H. Fiske and William I. Traeger as sheriff of Los Angeles County, to set aside a sheriff's sale.

The material facts leading up to the sale by the sheriff, of which complaint is made, are substantially as follows: Some time before the sale in question took place, the defendant W. B. Scarborough Company had commenced an action against the plaintiffs herein and in connection therewith had caused a writ of attachment to issue and to be served, under and by virtue of which defendant Traeger as sheriff, acting through his deputies, levied upon certain household furniture and furnishings belonging to the defendants in that action.

Some days thereafter defendant Fiske, who theretofore had recovered a judgment against the plaintiffs herein, assigned said judgment to defendant W. B. Scarborough Company, which company caused defendant Traeger, as said sheriff, to levy what is termed a "paper" execution, as distinguished from an actual levy, upon the same household furniture which previously had been attached in the action brought against plaintiffs herein by the defendant W. B. Scarborough Company.   It was under said "paper" levy that the sale was made by defendant Traeger as said sheriff and which sale is here the subject of appellants' attack.

[1]    At the outset it may be stated as a general rule supported by many authorities, that in a proceeding to set aside a sale under execution, excepting where some special facts are alleged which may create jurisdiction in a court of equity, the proper procedure is by motion to vacate the sale in the action under which it is claimed any irregularities occurred.    (23 Corpus Juris, 682 et seq.; *Boles* v. *Johnston,* 23 Cal. 226 [83 Am. Dec. 111]; *Ketchum* v. *Crippen,* 37 Cal. 223; *Browne* v. *Ferrea,* 51 Cal. 552; *Craig* v. *Stansbury,* 37 Cal. App. 668 [174 Pac. 404]; where the authorities are reviewed, *Morris* v. *Winans,* 30 Cal. App. 575 [159 Pac. 213].)

However, without considering whether plaintiffs' remedy, if any, was necessarily by way of motion rather than by a suit in equity, appellants' points for reversal will be here considered as though there was no question of the correctness of the procedure adopted by them.

As several of appellants' specifications of error deal particularly with the court's findings of fact, so much thereof as is pertinent to such specifications is hereafter set forth:

"That on July 10, 1923, a writ of attachment was duly issued out of this court in the action mentioned in paragraph V of the plaintiffs' complaint (*W. B. Scarborough Co.* v. *Colver*), and placed in the hands of the defendant sheriff for levy, and the sheriff did levy said writ upon the property particularly described in paragraph VI of the complaint (the furniture, etc., which was the subject of the sheriff's sale), and the sheriff thereafter returned said writ of attachment with his written return endorsed thereon, certifying that he had levied said writ upon said property and that he had taken said property into his possession and custody by leaving his keeper in charge thereof; and said writ of attachment and return thereof has never been changed, modified or set aside, and the court finds that under and by virtue of said writ the sheriff did take said property into his possession and control and placed a keeper in charge who has ever since remained in control thereof.

"That on the 19th day of July, 1923, an execution issued out of this court in the action mentioned in paragraph VIII of the complaint (*Fiske* v. *Colver*), was placed in the hands of the defendant sheriff, and was levied upon the same property which the defendant sheriff had previously at-

tached under said writ of attachment and of which the sheriff then had possession and control by his keeper as above mentioned; and on the 24th day of July, 1923, the sheriff sold the said personal property to the defendant, W. B. Scarborough Company, who was then and there the highest and best bidder at said sale, and immediately thereafter, to-wit, on July 24, 1923, the defendant sheriff executed to the defendant, W. B. Scarborough Company, a certificate of sale for said property.

"The court further finds that said sale by said sheriff was had and conducted on the premises where said personal property was located and at and near the houses in which said property was then situated; that said property constituted the furnishings and fixtures of the houses in which it is located, and could not then be removed without serious injury thereto, and could not be taken out and removed by reason of the attachment which had theretofore been levied; that some of the property was in the immediate presence of the parties and some of the doors of the houses were open, but some of the doors to the apartments where the property is situated were closed, but the court finds that the plaintiffs were on the premises at the time of the sale and that the plaintiff, Fred Colver, was present at the sale and made bids for the property when offered for sale by the sheriff, and the plaintiffs at that time made no objection to the doors being locked nor as to the property not being in view of the officer and as to the property being sold in one parcel, and that plaintiffs made no request that the property be otherwise sold, and the court finds that by their conduct the plaintiffs waived any objection that they might have had to any of said matters.

"That there was no evidence introduced in the action concerning the title to the real property where said personal property was located, nor as to the title to the personal property itself, nor was there any evidence introduced to support the allegations in paragraphs XIII and XIV of the complaint, and for that reason the court makes no finding upon the same.

"That after the said sale the plaintiffs did offer to pay the amount specified in paragraph XV of the complaint to the defendant sheriff, but the court finds that there was no tender made to the purchaser of said property, to-wit, W. B.

Scarborough Company, and the court finds that the plaintiffs did pay to the clerk of the court the sum specified in that paragraph.''

[2] Appellants contend that the court erred in its findings to the effect that the sheriff levied said attachment and by virtue thereof ''did take said property into his possession and control and placed a keeper in charge who has ever since remained in control thereof,'' for the reason that there is no testimony in support of such finding, and that such finding ''is a mere conclusion of law.'' Also, that because the second levy was necessarily dependent upon the validity of the first levy, there is nothing on which to base the finding to which objection is made. To be more specific with reference to appellants' charges, they are in substance, that in making the levy of the attachment in the case of *W. B. Scarborough Company* v. *Colver,* the sheriff did not ''view'' the property, nor did he ever have same under his custody and control; that in making the sale under the ''paper'' levy in the case brought by Fiske against Colver the sheriff failed to offer the property in separate parcels, but sold it *en masse,* and that it was not in ''view'' at the time the sale was made.

The evidence, though conflicting, admits of the conclusion that at the time the levy on the attachment was made the officer entered the main hallway of the apartment house and the rooms therein occupied by the Colvers; that thereupon he gave to defendant Kate Colver a copy of the summons and complaint and told her that he had a writ of attachment on the ''contents of the property'' and that he ''was going to leave a keeper there in charge of the property.'' The officer also gave to defendant Fred Colver a copy of the writ of attachment and stated to him that he was making a service on him ''in an attachment suit.'' Although, with the exception of the hallways and the apartment occupied by the Colvers, the rooms and the various apartments in the apartment house were all closed or locked, and the officer did not enter any of them, a keeper for the sheriff was left in charge, who remained continuously on duty as such keeper from the date when the levy was made to and including the day of sale. Defendant Fred Colver testified that ''he (the keeper) stayed on the porch during the daytime, and in a vacant apartment on the third floor during the evening.''

In this connection, it is appellants' contention that under the provisions of subdivision 3 of section 542 of the Code of Civil Procedure the sheriff was required to take the attached property "into custody," and that by the authority of adjudicated cases, such as *Taffts* v. *Manlove*, 14 Cal. 49 [73 Am. Dec. 610], and *Crawford* v. *Newell*, 23 Iowa, 453, at the time the property was attached it was necessary that it "be within the view of the officer, i. e., that he must see it, and know what he is attaching and take the property into his actual custody."

Subdivision 3 of section 542 of the Code of Civil Procedure provides that "personal property, capable of manual delivery, must be attached by taking it into custody."

The case of *Taffts* v. *Manlove*, 14 Cal. 49 [73 Am. Dec. 610]; is generally relied upon by text-writers and by some judges in their opinion for the construction placed upon statutes requiring that the attaching officer shall take the attached property "into custody," that at the time the levy is made such attached property "must be within the view of such officer." In the case referred to, the officer was attempting to levy upon a stock of goods in a store, the doors of which, upon his arrival thereat, being locked. Thereupon he placed a keeper at the rear door of the store, while the officer remained at the front door thereof. No claim was made by the officer that up to that time a levy had been made. Later he obtained a key which enabled him to enter the store; whereupon he levied upon the contents of the store, made an inventory thereof, and left a keeper in charge. Referring to the acts of the officer prior to his entry of the store, the court in rendering its opinion said:

"However this may be, we can conceive of no principle of law, and have been referred to no case, which holds that the acts relied on by appellant constitute a levy. Waiving everything else, the essential element of an intention to levy prior to the entry seems to be wholly wanting, from anything we can see in the agreed statement. That the sheriff came to the house in order to make the levy is very certain; but that he intended to make, or considered that he *had* made, a levy on goods in the house, by standing at one door and putting his companion at the other, does not appear. He made then no note or memorandum of the levy—did not, perhaps, even know what goods were in the store, their

description or value; and besides this, demanded the key afterward and entered, and *then* seized the goods, took the inventory, and indorsed the levy. There is neither proof nor probability that, before this time, he considered he had seized the goods, or if he did, we think he was clearly mistaken. . . .

"But it cannot be necessary to pursue this inquiry. It is too plain for argument, that there can be no levy when the officer does not even know the subject of the levy. As well might a sheriff stand in the street and levy upon the contents of a banking-house as to stand in a store door at midnight, and claim that merely by standing there and preventing any person from coming into the store, he had levied on the contents, whatever they were, of the store; and this without having any knowledge of the general nature of the stock, much less of the particular description or value. But, as we have said before, nothing appears to show that the mere watching and guarding of the storehouse was meant to be a levy upon the property inside; but these were acts merely in prosecution of the design to enter the house and levy on the property there, which purpose was afterwards accomplished."

It would appear clear that the case is an authority covering the particular facts thereof only and cannot be taken as a pronouncement that in all cases the attached property must be in the actual view of the attaching officer. While the authorities on the subject are not harmonious, the general statement may be frequently found that to constitute a valid levy upon personalty the attaching officer must not only have such property in view, but as well must assume such dominion over it as would render him liable to an action for trespass were it not for the protection afforded him by the court's process. (Vol. 6 Corpus Juris, p. 223, and cases cited.) A limitation upon such rule is also announced, which is likewise supported by many authorities, that the taking by the attaching officer may be either actual or constructive, dependent upon the nature and the situation and the location of the property attached. (See *Rogers* v. *Gilmore,* 51 Cal. 309; *Sinsheimer* v. *Whitely,* 111 Cal. 378 [52 Am. St. Rep. 192, 43 Pac. 1109].) Manifestly the requirement that the property proposed to be attached must be within the "view" of the attaching officer should serve

some useful purpose. Assuming its object to be that of future identification, if need be, of the property, in most cases, especially where the levy is made upon many different articles such as might be found in different pieces of furniture and furnishings (as in the case at bar) in a large apartment house, the "view" by the officer would fail of its purpose for the reason that no man, however observant and retentive of memory, on a casual inspection or examination of attached property (such as is ordinarily had by an attaching officer) would be capable of either noting in his mind even the essential differences, if any, existing between the attached property and other properties of the same style and manufacture, or of remembering any considerable number of such several dissimilarities after any great lapse of time. Even in those authorities which follow the assumed holding in the case of *Taffts* v. *Manlove,* 14 Cal. 49 [73 Am. Dec. 610], to the effect that the attaching officer must "view" the property proposed to be levied upon, it will be found that their rulings do not apply to a state of facts such as is here presented. In nearly all of those cases the property upon which the levy was sought to be made was not within even the constructive control of the attaching officer, much less of the actual dominion by him over it. The purpose of the statute in requiring that in executing the writ as to personal property it "must be attached by taking into custody" is obviously that of being certain to hold the identical property for the uses intended by the process of the court. The impracticability of compliance with a hard-and-fast rule requiring that the officer levying the attachment must actually see that upon which the levy is made, may be illustrated by an extreme situation: In levying upon a large number of articles, presumably all of the same general description, such, for instance, as canned fish, contained in closed wooden cases or boxes, or grain of any kind, inclosed in bags or sacks, it would appear ridiculous to demand that a valid levy, in order to come within the terms of the statute and thereunder that the attaching officer must actually "view" the property, would require that as to the canned fish in the wooden cases he must not only break open each case, but each can as well; or as to the grain in the bags, that he must cut open each bag, so that he might attest the

fact of personal vision by him of that which his return showed had been the subject of the levy. No such idle and useless and destructive acts are contemplated by the statutory requirement that the attached property must be taken "into custody." As is said in the case of *Crawford* v, *Newell,* 23 Iowa, 453, which case is cited by appellants but which appears to not sustain their contention:

"To constitute a valid, operative attachment levy under the provisions of the statute, the officer should do that which would amount to a change of possession, or something that would be equivalent to a claim of dominion, coupled with a power to exercise it." And see: Freeman on Executions, sec. 262; *Hemmenway* v. *Wheeler,* 14 Pick. (Mass.) 408 [25 Am. Dec. 411]; *Russell* v. *Major,* 29 Mo. App. 167; *Poling* v. *Flanagan,* 41 W. Va. 191 [23 S. E. 685]; *Laughlin* v. *Reed,* 89 Me. 226 [36 Atl. 131].

In the case at bar the acts of the attaching officer, coupled with those of the keeper left in charge of the attached property, indicated not only a change of possession of the property from the defendants in the action to the sheriff, and that the sheriff thereafter not only claimed dominion over it, but as well that with the exception of that part of the furniture which was removed by defendant Fred Colver, the sheriff actually exercised dominion over the property to the exclusion of every other individual or agency whatsoever.

The case of *Moore* v. *Brown etc. Furniture Co.,* 107 Ga. 139 [32 S. E. 835], in its facts was strikingly like the facts of the case at bar in that the levy which was there attacked was upon furniture in a hotel. Prior to making the levy the attaching officer did not "view" the furniture other than possibly so much thereof as was visible in the dining-room and the office of the hotel. The other acts, however, by the officer making the levy were perhaps somewhat stronger than those in the instant case. Those matters, however, were unquestioned. The point was solely as to the necessity of a "view" of the attached property by the officer making the levy. The court reviewed and distinguished the authorities, including the case of *Taffts* v. *Manlove,* 14 Cal. 49 [73 Am. Dec. 610]; which it was contended indicated that in order to constitute a valid levy the attached property must be within the "view" of the attaching officer, and ruled that the essential acts of such officer need not necessarily include

a "view" of the attached property.   In referring to a state-
ment found in Freeman on Executions (vol. 2, sec. 260) and
some adjudicated cases to the effect that "he (the officer)
must have it (the property) within view," the court said:
"These are the authorities cited by the author to establish
the doctrine that, to constitute a levy of personal property,
the officer must have it within his view.   The adjudications
referred to do not. sustain the literal meaning of the text.
But, from all those cited, it is sufficient if the property be
in the control and custody of the officer."

This court is therefore convinced that the criticised find-
ing is supported by the evidence and that the requirements
of  section  542 of the Code of Civil Procedure applicable
thereto, were substantially met by the attaching officer.

[3]   For the alleged reason that the findings by the court
were not supported by the evidence, appellants make fur-
ther complaint that the court found as a fact "that said
property constituted the furnishings and fixtures of the
houses in which it is located," etc.—the criticism of appel-
lants being particularly directed to the word "fixtures"—on
the ground that fixtures are not personal property.   But an
inspection of the remainder of the record herein shows con-
clusively that the term "fixtures" was not used in the sense
suggested by appellants, but was intended solely as a
description of the furniture and furnishings included in the
attached property as disclosed by the sheriff's return on the
levy and the sale.   So construed the evidence in the case is
ample to support the findings of which complaint is made.

[4]   Further objection on the part of appellants to the
findings by the court is that the court erred in its findings
that at the time of the sale "some of the property was in
the immediate presence of the parties and some of the doors
of the houses were open," for the reason "that there was no
testimony to support such finding; that it was contrary to
the evidence and contrary to the stipulations of the parties
entered into in open court."

In connection with such objection, it is urged that at the
time the attached property was sold by the sheriff none of
the articles of furniture or furnishings was in view of any
of the bidders at the sale, as is required by the provisions
of section 694 of the Code of Civil Procedure.   The sale
took place on the premises where the attached property was

located. The testimony given by the officer who made the sale was that at the time the sale was made he entered one of the apartments, "not very far in—just to see that it was an apartment and a lot of furniture"; that "the keeper went over to two apartments . . . and both doors were locked"; that he (the officer) inquired of an attorney who was present and who represented the Colvers if there was some way to see the furniture, and was informed by him that "the houses were all locked up—no way of getting in"; that the officer then asked the attorney, "What do you want to do, do you want to sell it just the way it is here?" and the attorney replied, "Yes."

The evidence further shows that just before the sale took place defendant Fred Colver had removed some of the attached property from the apartment house, and that he had ordered "all tenants to keep their doors locked"; also that when the sale took place he made several bids on the property.

In the case of *Marsh* v. *Lapp*, 180 Cal. 231 [180 Pac. 533], in which was involved the question of the right of the judgment debtor on execution sale of furniture in an apartment house to have the property "within view of those who attend the sale," as provided by section 694 of the Code of Civil Procedure, it appeared that after the defendant had been served with the notice of the sale, he removed about one-half of the furniture from the apartment house and stored it in a warehouse. With reference to the contention of the appellant in that case that the sale was void because the property was not within the view of those persons who attended the sale, the court said: "Under the circumstances of this case there is no merit in this point. The statutory rule is intended for the protection of the judgment debtor, and he may waive his right thereunder if he sees fit to do so. (*Lexington Bank* v. *Wirges*, 52 Neb. 649 [72 N. W. 1049].) The removal of the property by defendant after notice of the sale amounted to such a waiver, and he cannot now be heard to complain of a result produced by his own voluntary act. (*Foster* v. *Goree*, 5 Ala. 424, 429.)"

In the instant case the attached property was sold *en masse* because the attorney representing the defendants had stated that "the houses are all locked up—no way of getting in," and when asked by the officer making the sale "What

do you want to do, do you want to sell it just the way it is here?" he replied, "Yes." Besides which the acquiescence of the judgment debtor in the sale was manifested by the fact that defendant Fred Colver made several bids on the property while it was being auctioned by the officer.

Section 694 of the Code of Civil Procedure, on which appellants rely, provides, not that a sale of personal property must be made in parcels, but that it must "be sold in such parcels as are likely to bring the highest price." There is no showing by appellant that the price received for the property was not its full value, or that if it had been sold in separate parcels the price received would have exceeded the price for which the property was sold.

The appeal in the case of *Smith* v. *Randall*, 6 Cal. 47 [65 Am. Dec. 475], involved, among other things, the question of vacating a sale on the ground that certain real property had been sold as one parcel rather than in separate parcels. It appeared that the failure on the part of the sheriff to sell the property in separate parcels was occasioned by the incorrect description of the premises given to the sheriff by the defendant and by his request that the property be sold "in gross." The court said: "To set aside the sale on this ground, under the circumstances, would be to allow a party to take advantage of his own deceit or negligence." To the same effect, see *Hopkins* v. *Wiard*, 72 Cal. 259, 262 [13 Pac. 687, 688], where it appears that the defendant's attorney indorsed "as satisfactory" an order by the trial court that the property be sold "in gross." In *Hudepohl* v. *Liberty Hills W. etc. Co.*, 94 Cal. 588, 592 [28 Am. St. Rep. 149, 29 Pac. 1025], the court said: "The judgment debtor may by parol waive a sale of the land in parcels, and give authority to sell in mass," citing *Smith* v. *Randall*, 6 Cal. 52 [65 Am. Dec. 475]; *San Francisco* v. *Pixley*, 21 Cal. 59; *Smith* v. *Meldren*, 107 Pa. 348. See, also, *Frink* v. *Roe*, 70 Cal. 296, 301 [11 Pac. 820]. It must therefore be concluded that the evidence supported the finding of which complaint is made, and that the irregularities, if any there were, on the part of the officer at the time he made the sale were waived by the defendants in the action.

[5] It is further contended by appellants that the trial court erred in its findings that "the sheriff thereafter returned said writ of attachment with his written return en-

dorsed thereon, certifying that he had levied said writ upon said property and that he had taken said property into his possession and custody," for the reason, as assigned by appellants, that "the said written return shows upon its face as executed by 'Wm. I. Traeger, sheriff, by M. Q. Adams, deputy sheriff,' and the testimony shows that one Tucker attempted to serve said writ of attachment and that M. Q. Adams, personally, knew nothing about what was done in the premises." In support of such contention no authority is cited by appellants, nor is this court favored with any argument other than the statement that, although the rule is that a deputy performing the act must make the return thereof in the name of his principal, such rule does not extend to another deputy who has no personal knowledge of the facts.

In the case of *Carter* v. *O'Bryan,* 105 Ala. 305 [16 South. 894, 897], it was held that "the objection that the sheriff, who made the levy and who had failed to make the proper returns, could alone make them, and that his successor, in compliance with an order of the court to do so, could not make them, was without merit. The duty to be performed attached to the officer, and was an official, not personal, duty." (See Pol. Code, sec. 4171.) If a successor in office, who was personally unacquainted with the facts, was qualified to make a return, it would appear plain that a deputy of the sheriff in office, although having no personal knowledge of the facts, would be equally competent.

[6] Appellants complain that the trial court made findings contrary to "decisions of the court expressed at the trial." But it is well settled that opinions declared by the judge during the course of the trial or thereafter are not binding; but, to the contrary, that the findings and judgment are conclusive. (*Churchill* v. *Flournoy,* 127 Cal. 355, 360 [59 Pac. 791]; *Belger* v. *Sanchez,* 137 Cal. 614, 618 [70 Pac. 738]; *Northern Cal. Power Co.* v. *Wallers,* 174 Cal. 377, 381 [163 Pac. 214].)

[7] The point is advanced by appellants that because the trial court failed to find on certain issues presented by the pleadings, the judgment should be reversed.

With reference to the first of such so-called issues, the allegations in the answer of the defendant in effect were but an admission of an allegation contained in plaintiff's com-

plaint, and therefore required no finding by the court. As to the other omissions by the trial court to make the findings regarding which complaint is made, upon examination of the record it is apparent that the findings as made upon the material issues of the pleadings are ample to support the judgment, and that any omitted findings which might be made on other issues, however favorable to plaintiffs' contentions, would not affect the conclusions of law made by the trial court from the findings as a whole. In the case of *Sharp* v. *Pitman,* 166 Cal. 501, 505 [137 Pac. 234, 236], it is said: "If the findings which are made are of such a character as to dispose of issues which are sufficient to uphold the judgment, it is not a mistrial or against law to fail or omit to make findings upon other issues, which if made, would not invalidate the judgment." See, also, *Lincoln* v. *Hoggard,* 66 Cal. App. 196 [225 Pac. 770].

The judgment is affirmed.

Conrey, P. J., and Curtis, J., concurred.

A petition by appellants to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 28, 1925.

Houser, J., *pro tem.,* did not participate.