## FAIVRET v. FIRST NAT. BANK IN RICHMOND et al.
### No. 11359.

Circuit Court of Appeals, Ninth Circuit.
April 4, 1947.

828

Arthur W. Brouillet, Robert H. Fouke, Frank J. Perry, Arthur P. Shapro and George Olshausen, all of San Francisco, Cal., for appellant.

Louis L. Bernheim, James M. Popper and Irving C. Sugarman, all of Richmond, Cal., for appellees.

Before GARRECHT, MATHEWS and ORR, Circuit Judges.

GARRECHT, Circuit Judge.

Robert Faivret brought an action for conversion of certain merchandise held by the defendant Bank as pledgee. The case was tried without a jury. In its memorandum opinion the trial court found as facts that plaintiff entered into arrangements with defendant for financing a merchandise jobber business to be conducted by plaintiff in San Francisco. Under the plan, merchandise purchased by Faivret was to be placed in a field warehouse established on his premises and warehouse receipts covering the same were to be issued to the Bank. The Bank would then lend up to 85 per cent of the invoice price of the merchandise so purchased, all purchases to be subject to the approval of the Bank. A "blanket release" agreement provided for the release to Faivret of $3,000 worth of merchandise each week. When this was sold the resulting accounts receivable were assigned to the Bank which was to lend 90 percent of the invoices covering such sales, the accounts also being subject to the Bank's approval.

Shortly after this arrangement and in the early part of 1944, the Bank advised Faivret that the accounts receivable entailed too much work and asked him to secure another financial arrangement, which he did. At that time, too, the warehouse receipt loans were reduced from 85 percent to 60 percent. Towards the end of March, 1944, the Bank advised Faivret that the National Bank Examiner had disapproved the loans and ordered the Bank to get its money out. The month following the Bank made formal demand on him for payment of all his notes. Efforts to liquidate the indebtedness without foreclosure proved unsuccessful and the property was noticed for sale for May 22, 1944. On that day the defendant conducted a pledge sale of the merchandise. Although the sale was noticed for 9 a. m., it was delayed until 11 o'clock. The plaintiff refused to allow the sale in the presence of the merchandise, and in the place where the sale was noticed, because of a clause in his lease, and the sale was conducted on the sidewalk in front of the premises where the property was warehoused. The plaintiff was offered the opportunity to bid but declined, but when it appeared that the property might be sold for substantially less than the indebtedness, plaintiff's attorney suggested that the Bank bid. The property was then bid in for $52,000.00 on behalf of the Bank. Immediately thereafter the defendant Bank's attorney offered to let the plaintiff redeem the merchandise by payment in full with all expenses to said date. The plaintiff did not accept the offer and the Bank on the day following the sale began to remove the property. The plaintiff did not tender to the defendant any part of the money which plaintiff owed, and on May 24, 1944 filed an action for conversion. On these findings the trial court concluded that the plaintiff ratified the sale and waived any defects therein and entered judgment for defendant.

On appeal the plaintiff states that the evidence is insufficient to support the findings and argues first, the prima facie facts of conversion are admitted; second, no tender was needed to support the cause of action; third, as a matter of law the warehouse receipts did not secure the accounts receivable debts, for which reason the demand was excessive and that this excused lack of tender by plaintiff; and lastly, the evidence is insufficient as a matter of law to show a waiver of the prima facie conversion.

From an examination of the record, it is clear that the trial court based its conclusions largely upon an evaluation of the testimony given, much of it being conflicting. A sample of the conflict of the testimony is that concerning the general pledge agreement upon which the financing of almost the entire business of the plaintiff depended, and under which the loan was granted.

■ This Court has repeatedly held that, under such circumstances, it would not be inclined to disturb the findings of the lower court. Peter Barceloux Co. v. Buffum, 9 Cir., 61 F.2d 145, 157, affirmed 289 U.S. 227, 53 S.Ct. 539, 77 L.Ed. 1140, Jones v. Jones, 9 Cir., 35 F.2d 943, 945; John T. Porter Co. et al., v. Java Cocoanut Co., Ltd., 9 Cir., 4 F.2d 476, 478, certiorari denied, 268 U.S. 697-698, 45 S.Ct. 515, 69 L. Ed. 1163; Ostbern v. Dean, 9 Cir., 18 F.2d 1019, 1020; Monson v. Hibler, 9 Cir., 24 F.2d 909, 910.

In Monson v. Hibler, supra, the court said: "The judgment of a District Court on the facts will not be disturbed on appeal unless it is clearly against the weight of the evidence, or unless plain and manifest error exists * * *".

Appellant states that the California Civil Code lays down certain requirements which must be followed in a pledge sale and that if those requirements are not followed, the pledgee is guilty of conversion. The requirements are the following:

"Section 3005, C.C. * * * The sale by pledgee, of property pledged, must be made by public auction, in the manner and upon the notice of sale of personal property under execution."

"Section 694, C.C.P. * * * All sales of property under execution or under power contained in any deed of trust hereafter executed must be held in the county where said property or some part thereof is situated, and must be made at auction, to the highest bidder, between the hours of 9 in

the morning and 5 in the afternoon. * * * Neither the officer holding the execution nor his deputy can become a purchaser or be interested in any purchase, at such sale. When the sale is under execution and is of personal property, capable of manual delivery, it must be within view of those who attend the sale, and be sold in such parcels as are likely to bring the highest price * * *".

The appellant complains specially that the merchandise sold was in a warehouse on the fourth floor of the building but the sale was held on the street below; the sale was conducted by one of the attorneys for the Bank; the only bidders were two persons who had been appointed agents for the Bank and the Bank's president; the pledged property was sold on the president's bid, and that although the sale had been noticed for 9 a. m. it was not commenced until 11 a. m., all of which facts, according to appellant, constitute a prima facie conversion of the property involved by the defendant Bank.

All these facts were specifically considered by the District Court and its findings respecting them are as follows:

"It appears from the evidence that the instant sale was noticed for 9:00 a. m. on May 22, at the field warehouse on the plaintiff's premises. Testimony as to the actual arrival time of all the parties is conflicting but they were all present by 9:20 and *plaintiff alone was responsible* for delaying the sale until 11 o'clock. When Baer and Friedman, the *only* two *prospective bidders,* sought permission to inspect the merchandise, it was refused until they had been made agents of the defendant Bank. *Plaintiff then refused* to allow the sale in the presence of the property because of a clause in his lease. As a result, the sale was conducted on the sidewalk in front of the building, with Sugarman, the Bank's attorney acting as auctioneer. Baer and Friedman bid $30,000 and $32,500, respectively, for the whole amount of the merchandise, after declaring that they were not interested in bidding on it in lots. Plaintiff was offered the opportunity to bid, but declined, and when it appeared that the property might be sold for substantially less than his indebtedness, *his attorney suggest-*ed that the Bank bid. Partridge bid the property in for $52,000.00." (Emphasis supplied.)

We have examined the record and have concluded with the trial court that, while the sale of the property in question was not accomplished in strict compliance with the code provisions relating to auction sales of pledged property, the failure to so strictly comply was due chiefly to the obstacles presented by the appellant.

It is the general requirement under the California Code provisions that the property sold under execution shall be present at the time and place of sale so that it can be readily examined by the bidders. An important element of a sale by auction is that the bidders shall be given a free and full opportunity to compete among themselves in bidding for the property. This cannot be done if the property is not in view and the bidders do not know what they are buying. However, the code does not specify that the property should be in the continuous and immediate view of the bidders during the entire auction proceeding and if the property was nearby and an opportunity for inspection was given the code provisions are substantially complied with.

The sale in this case was conducted on the sidewalk in front of the premises wherein the property was stored after the persons interested in the sale, including the bidders, had seen the property and were satisfied they knew what they were going to bid on. There is no testimony or evidence that anyone who was interested in the purchase was not given an opportunity to inspect the property. The notice of sale was given in accordance with law and the preliminary activities for the sale were commenced at the time and place specified. There is no element of surprise to any of the interested parties shown.

The appellants do not claim that the sale was unfair or without good faith and the record does not disclose the lack of fairness or good faith on the part of the pledgee. The acts now complained of were those that pledgor not only failed to object at the time of sale but actually participated

in or was instrumental in creating. It has been said that the provision of the code above cited "being intended for the benefit of the owner, he may expressly or impliedly waive it by word or action." 69 A.L.R. Anno. 1193; and the "execution debtor may be estopped by his conduct from attacking the sale,[1] as where he participates in, or has knowledge of and assents to, irregularities in the conduct of the sale * * *. Provisions for the benefit of the debtor, relating to the writ, levy, or sale, may ordinarily be waived by him,[2] unless he is in failing circumstances, as by failure to object to a sale en masse." 33 C.J.S.Executions § 228, pp. 483, 484. It is our opinion that the letter written by the pledgor to the pledgee objecting to the sale of the goods on the warehouse premises because of a clause in the lease prohibiting an auction sale, having been sent after the notice of sale had been given, that is, within two days of such sale, and having been received on the very day of sale, did not constitute a valid objection within reasonable time.

In Marsh v. Lapp, 180 Cal. 231, 232, 180 P. 533, 534, the court said: "Defendant's second point is that, even though the property in question was sold for the sum of $3,619.42, which was admittedly the full value of *all* the property, both in the apartment house and in the warehouse, the sale was nevertheless invalid as to the property in the warehouse, because violative of the provision of section 694 of the Code of Civil Procedure, which requires that in the case of an execution sale of personal property capable of manual delivery the property must be ' * * * within view of those who attend the sale. * * *' Under the circumstances of this case there is no merit in this point. The statutory rule is intended for the protection of the judgment debtor, and he may waive his right thereunder if he sees fit to do so. Lexington Bank v. Wirges, 52 Neb. 649, 72 N.W. 1049. The removal of the property by defendant after notice of the sale amounted to such a waiver, and he cannot now be heard to complain of a result produced by his own voluntary act. Foster v. Goree, 5 Ala. 424, 429." This case is cited with

approval in Colver v. W. B. Scarborough Co., 73 Cal.App. 452, 238 P. 1104, supra.

The appellant next complains that the sale was conducted by one of the attorneys for the Bank and all bids and final purchase were made by other agents of the Bank.

Under Section 3010 of the California Civil Code: "Whenever property pledged is sold at public auction, in the manner provided by section three thousand and five of this code, the pledgee or pledge-holder may purchase said property at such sale." This statute, therefore, authorized the pledgee to purchase at its own sale. Furthermore, the general rule, subject to certain exceptions, not here relevant, is that in the absence of any agreement to the contrary, a power to sell without judicial process is deemed by implication to be vested in the pledgee. 41 Am.Jur. 641, § 78. The pledgee may sell the property as his own, or have another dispose of it for his benefit. 49 C.J. 995, § 242. In exercising the power of sale, the pledgee must act in good faith and safeguard the interests of the pledgor, and he is bound to exercise reasonable care and diligence to obtain what the property is worth.

While the evidence is conflicting in many respects, it is clear that the pledgee did act in good faith to safeguard its interests and those of the pledgor and to obtain what the property was worth. If pledgee sells as provided by law and by the contract, without doing anything to prevent a fair sale, the pledgor cannot complain. 49 C.J. 1003, § 260. The rule of law that an officer making a sale cannot, either directly or indirectly, become a purchaser, nor can he bid for the property for himself or as the agent of another, is qualified in that at least he cannot do so without the consent of the creditor and the debtor. 33 C.J.S. Executions § 212, p. 457. In this case, by its very nature the defendant corporation would have had to act through its agents. However, neither of the agents representing it was interested in the property for himself individually, one of whom acted as seller, and the other, Partridge, bid for the property on behalf

---

[1] Colver v. W. B. Scarborough Co., 73 Cal.App. 441, 238 P. 1104.

[2] Ibid.; Stoner v. Oneida Motor Car Co., 154 Misc. 97, 275 N.Y.S. 426.

832

of the Bank only after the suggestion and therefore with the implied consent of the debtor.

The cases cited by appellant, Helmick v. Holaday, 106 Cal.App. 380, 289 P. 224, and Henderson v. Fisher, 38 Cal.App. 270, 176 P. 63, are notable for the findings by the court of the intent to defraud and deceive the debtor and that the sales were unfair or fraudulent, elements entirely lacking in the case before us.

Moreover, the evidence adduced at the trial is that Gerald Baer and Irwin Friedman, the two "agents" of the Bank who bid in at the sale, were appointed as such only that they might gain admittance to the premises in order to view the merchandise, and the pledgor had suggested that they be so appointed for that purpose. Further, it does not appear that the two men went to the place of sale in any representative capacity, but rather they were present as individual bidders and prospective buyers, and that they actually participated in the sale and bid not as "agents" but for their own purposes.

The trial court found with regard to this as follows: "That it is a fact that Gerald Baer and Irwin Friedman, the only two prospective bidders, sought permission to inspect the merchandise, but that such permission was refused by the plaintiff until said persons have been made agents of the defendant bank."

The appellant also contends that there was an excessive demand made preliminary to the sale which was equal to an act of conversion, and specifically that there is no evidence sufficient to support a finding that the warehoused goods secured any debts other than those originally described as secured by warehouse receipts.

The findings of the trial court are significant on this point: "That it is a fact that the accounts receivable loans and the warehouse receipt loans were not entirely separate transactions, but were so interrelated that the warehouse merchandise could legally be sold to satisfy all indebtedness. That it is a fact that the accounts receivable and the warehouse merchandise above referred to were pledged to the defendant bank to secure all the obligations of the plaintiff."

The court's findings were based upon conflicting evidence and therefore will not be disturbed by this court.

Under all the circumstances of this case, it must be concluded that the irregularities on the part of the pledgee at the time of the sale, were waived or consented to by the pledgor, and that while the sale was not conducted in strict compliance with the law, it was fair and with due regard to the rights of the pledgor, and that as far as pledgee was able to do so, without hindrance by the pledgor, it exercised its power of sale with sufficient care and diligence so as to protect the rights of the pledgor and that the sale did not result in any overreaching of the pledgor. By his conduct appellant ratified the sale, and his actions preclude his objecting to its form or irregularities.

Since we conclude that the sale was effective for its purpose, we do not deem it necessary to go into the merits of appellant's contention that a prima facie case on conversion was established by him or that a tender of the amount due was unnecessary under the circumstances.

Judgment affirmed.