**Robert E. QUINN et al.**

v.

**S.S. JIAN, her boilers, engines, etc.**

**Adm. No. 4684.**

United States District Court
D. Maryland.

July 30, 1964.

Supplementary Opinion Aug. 7, 1964.

David R. Owen, Baltimore, Md., for exceptant, Calicchio.

Richard F. Cadigan, Baltimore, Md., for purchaser, Manolis.

Arthur G. Murphy and Ronald T. Osborn, Asst. U. S. Attys., Baltimore, Md., for United States Marshal.

Sol C. Berenholtz, Solomon Kaplan, Edward Pierson, Ober, Williams & Grimes, Lord, Whip, Coughlan & Green, Niles, Barton, Gans & Markell, John H. Skeen, Jr., Piper & Marbury, and Peter Parker, Baltimore, Md., and J. Richard O'Connell, Towson, Md., for various creditors.

THOMSEN, Chief Judge.

An unsuccessful bidder has excepted to the ratification of the report of sale at auction of the S. S. Jian by the United States Marshal pursuant to an order of this Court, on the ground that the successful bidder failed to make "a cash deposit of 10% of the bid at the time of sale", as directed by the order.

The sale was held in a jury room on July 21, 1964, at 1:00 p. m., and lasted more than two hours, including a short recess. Nicholas Manolis submitted the highest bid, $163,250, and the ship was knocked down to him. Howard C. Morgan had made the next highest bid, $163,000, as agent for the exceptant, Thomas Calicchio. After the auction was completed, Manolis, the Marshal and an Assistant United States Attorney who was advising the Marshal, went to the Marshal's office, where Manolis, who had never before purchased a ship at a judicial sale, told the Marshal that he did not have the deposit with him, but would have to obtain the cash or a check from a local bank a few blocks away. A deputy accompanied Manolis to the bank, where the latter obtained a cashier's check for $15,300, the amount which the Chicago attorney for whom Manolis was acting had arranged to have available at the bank. Manolis promptly telephoned his principal requesting the balance of $1,025, but since it was nearly 4:00 p. m. the Baltimore bank refused to handle the matter that day, and Manolis ar-

ranged to have the money sent via Western Union. When Manolis delivered the check for $15,300 to the Marshal, and told him that the balance would be available that evening, the Marshal suggested that it be delivered the following morning. Manolis endorsed the check about 8:30 p. m. and it was delivered to the Marshal by messenger at 8:45 a. m. the next day.

No instance in which a purchaser has been unable to make a deposit within an hour or so after the sale has arisen in this Court within the memory of the most experienced practitioners and officials, although many vessels have been sold by our Marshals under similar orders. It has not been customary for the Marshal to require the purchaser to produce his deposit before the sale is concluded and the bidders disperse. If the sale is made in Baltimore, the purchaser and the Marshal usually proceed to the Marshal's office, when the purchaser customarily delivers one or more certified or cashier's checks in lieu of cash. In the counties, where small boats are frequently sold, the purchaser and the Marshal usually proceed to a bank in the nearest town, where the purchaser obtains the necessary cash or checks.

No opinion precisely in point has been cited or found. The applicable principles, however, are clear, although most of the authorities are of ancient vintage.

■ The duties of an officer selling property at a judicial sale are ministerial in their nature; he must observe the requirements of the applicable law and comply with the decree or order of sale; but within those limits he is vested with reasonable discretion. 30A Am.Jur., Judicial Sales, §§ 41, 42, 65, 66, pp. 930, 931, 941, 942; Breeding Motor Freight Lines, Inc. v. R. F. C., 10 Cir., 172 F.2d 416 (1949)

■■ Although the officer by whom the sale is conducted may not depart from or add to the terms set forth in the order of sale, the law appears to be well settled that an equity judge has discretionary power to modify an order affecting a sale which he has directed. Judicial sales should be certain, and all bidders should have equal opportunities. The importance of adhering to the terms specified in the order of sale was emphasized by the Supreme Court in Camden v. Mayhew, 129 U.S. 73, 84, 9 S.Ct. 246, 32 L.Ed. 608 (1889). "The court's power is limited to confirming the sale without change of terms, *or with slight change thereof,* or to setting it aside, and does not extend to modifying materially the sale or its terms and then confirming it as so modified. But it does not necessarily follow that a modification of the conditions or terms of sale after the sale has been made results in converting it into a private sale, where the change consists simply in extending the time of payment a reasonable period, and the rights of others are not injuriously affected." 30A Am.Jur., Judicial Sales, § 90, p. 954 (Emphasis supplied). In re Great Western Beet Sugar Co., 22 Idaho 328, 125 P. 799, 43 L.R.A.,N.S., 671 (1912), the Idaho Supreme Court held that a sale was properly confirmed notwithstanding the fact that the deposit of 25% of the bid was made some eleven days after the sale under an order which required the 25% deposit to be made at the time of the sale. See also Fidelity Insurance, Trust & Safe Deposit Co. v. Roanoke Iron Co., 84 F. 752 (C.C., W.D. Va., 1897).

■ It is the general rule that confirmation of judicial sales rests largely within the sound discretion of the court. The court should see that no wrong has been accomplished by the manner in which the sale was conducted, and that the principles of public sales have not been violated. However, the policy of the law does not require the judge to scrutinize the actions of the officer in charge with a view to defeat the sale; on the contrary, reasonable inferences and conclusions should be drawn in support of his actions. Confirmation of the sale should not be refused except for substantial reasons. 30A Am.Jur., Judicial Sales, § 123, p. 972; § 125 et seq., p. 973 et seq.

■ In the instant case well over 90% of the deposit was available immediately after the sale; the balance would have been turned over to the Marshal within an hour or two thereafter if the sale had not lasted until so late in the day; the balance was in fact available that evening; and would have been delivered to the Marshal then if he had not preferred that it be delivered the following morning.

A number of able and experienced members of the admiralty bar attended the two hearings on these exceptions, representing parties having claims against the ship. After the arguments, and after having been asked by the Court to consider the basic "policy of the courts to engender and maintain confidence in the stability of judicial sales", op. cit. § 2, p. 904, almost all of them recommended that the sale be ratified; one or two made no recommendation; none of them recommended that the sale not be ratified.[1] The exceptant does not ask that the bidding be reopened, but that the vessel be sold to him for $163,000, the amount of his last bid.

The Court concludes: that the departure from the terms of sale was slight and was due to the circumstances outlined above, including the inexperience of the successful bidder; that the continued participation by Manolis in the auction resulted in some $10,000 more being realized for the creditors than if he had stopped bidding at $153,000; that no injustice has been done to anyone; and that an order should be entered confirming the sale to Manolis for $163,250.

## SUPPLEMENTARY OPINION

■ At the hearing on July 30, no one raised the point that Manolis was not a responsible bidder, although counsel for Calicchio argued that Manolis and his principals had acted irresponsibly in not having the required deposit available at the time of the sale. Nor was any question raised as to the responsibility of the promoters of Leo Enterprises, Inc., the newly formed corporation to which Manolis requested that the ship be transferred. The order confirming the sale directed that the balance of the purchase price be paid to the Marshal on or before August 4. On that day local counsel for the purchaser told the Court that his clients would be unable to pay the money to the Marshal that afternoon but he had been told that it would be available the following morning. On August 5 the purchaser again failed to produce the money, and on August 6 Calicchio filed a motion (1) to rescind the order of July 30 confirming the sale, on the ground that Manolis was not a responsible bidder, since neither he nor his nominee had complied with either Court order, and (2) to direct the Marshal to deliver a bill of sale for the vessel to Calicchio as the highest responsible bidder, or to his nominee, upon payment to the Marshal of the amount of Calicchio's bid, $163,000, and compliance with legal and customary requirements.

That motion was heard by the Court today, August 7. Neither Manolis nor any of his principals appeared, but from the evidence now before the Court it appears that Manolis was never able to perform and therefore was not a responsible bidder, that his principals have been unable to raise the balance of the purchase price either as equity or borrowed capital, and that during the last few days they have been trying unsuccessfully to peddle the ship to possible purchasers.

Proctors for the various parties having claims against the ship were again requested to make recommendations to the Court, and most of them recommended that the order of confirmation be rescinded and the ship sold to Calicchio, as the highest responsible bidder, for $163,000.

The Court will enter an appropriate order to that effect.

---

1. Several conflicting suggestions with respect to procedures in the future were made, and the Court will appoint a committee of the bar to make recommendations.