Bank of New York Mellon v. Peter Campbell, et al, No. 229-4-10 Wrcv (Teachout, J., Dec. 3, 2013)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

# STATE OF VERMONT

| | |
|---|---|
| **SUPERIOR COURT** | **CIVIL DIVISION** |
| **Windsor Unit** | |

| | |
|---|---|
| **THE BANK OF NEW YORK MELLON** | **Docket No. 229-4-10 Wrcv** |
| v. | |
| **PETER CAMPBELL, CINDY J. CAMPBELL, S.T. GRISWOLD & COMPANY, INC. and SARASOTA CCM, INC.** | |

_____

| | |
|---|---|
| **BANK OF AMERICA, N.A.** | **Docket No. 78-2-12 Wrcv** |
| v. | |
| **GREGORY P. BAILEY and LAURA E. BAILEY** | |

_____

| | |
|---|---|
| **DEUTSCHE BANK NATIONAL TRUST** | **Docket No. 568-10-11 Wrcv** |
| v. | |
| **GARRY CARLSON** | |

_____

| | |
|---|---|
| **BANK OF AMERICA, N.A.** | **Docket No. 319-5-12 Wrcv** |
| v. | |
| **STEPHEN E. PAUL and NANCI L. PAUL** | |

## DECISION
## JUDICIAL SALE PROCEDURES

These four cases came before the court on motions for confirmation of foreclosure sales. After a preliminary hearing in each case, a consolidated evidentiary hearing was held on October 8, 2013. Attorney Richard Volpe represented the plaintiffs in all four cases. One defendant, Peter Campbell, appeared by telephone and represented himself. Attorney Volpe filed a memorandum of law following the hearing.

In each case, the plaintiff was the only bidder at the judicial sale and is seeking confirmation of the sale. All sales were conducted with the same documentation and in the same manner. The issue is whether the sales were conducted in accordance with the requirements of law. For the reasons stated below, the court concludes that they were not, and the motions are denied. New sales may be held in accordance with the guidelines set forth herein.

<u>Background</u>

Vermont Foreclosure Law, set forth in Title 12 of the Vermont Statutes Annotated, provides for two types of foreclosure sales: judicial and non-judicial.[1] The type available for a particular foreclosure depends on the nature of the loan and property.[2] At the time these cases were filed, judicial sales were for residential and farm properties upon the request of either a plaintiff or defendant.[3] Judicial sales occur in cases which require the filing of a court proceeding and issuance of a judgment and decree of foreclosure by the court, and the sale takes place pursuant to the terms of the judgment and decree. The statute requires that the person who conducts the sale must file a report of sale with the court. A motion for confirmation must also be filed, whereupon the court reviews whether all requirements of law are met and if so, confirms the sale and issues an order providing for the disposition of sale proceeds. Title passes upon the recording of the order of confirmation.

Non-judicial sales, permitted for commercial loans and non-residential property foreclosures, are conducted by plaintiffs on their own without court oversight. 12 V.S.A. § 4531a(b) under prior law; 12 V.S.A. § 4961 et seq. under current law. There is no requirement to file a court proceeding. By statute the mortgagor and mortgagee determine the location of the sale, and the plaintiff is entitled to conduct the sale. There is no court case, no requirement of filing a report of sale with the court, no need for the court to review whether legal requirements have been met, and no need to determine whether the sale should be confirmed. Title passes upon the recording of the deed and an affidavit.

In all four cases, the plaintiffs filed actions and requested judicial sale foreclosures. The plaintiff's attorney was responsible for serving and publishing notices of sale with terms defined by statute. The content required in a notice of sale includes: a description of the premises, specification of the date and time of sale (which must by law be held on the subject premises without a specific court order otherwise), specification of the terms of sale, and a statement of the mortgagor's statutory right of redemption up to the time of sale.

Based on the evidence admitted at the hearing, the court makes the following findings of fact.

---

[1] While the statutory provisions of foreclosure law were significantly reorganized in Title 12 in 2012, and all of the four cases were filed under prior law, the 2012 amendments did not change the fundamentals of the conduct of judicial and non-judicial sales.

[2] Strict foreclosure is also available for all properties if a plaintiff proves that there is no equity in the property. 12 V.S.A. § 4941(c). No sale takes place in a strict foreclosure.

[3] Under current law, a judicial sale may occur in any foreclosure affecting real property on the request of any party or at the discretion of the court, whether or not the mortgage includes a power of sale provision. 12 V.S.A. § 4954.

Findings of Fact

In all four cases, the notices of sale were properly and timely served on the defendants and published as required. The notices of sale included the required content. They also included the following sentence: "Proof of financing for the balance of the purchase to be provided at the time of sale."

The same licensed auctioneer conducted all four sales. Following each sale, he completed an affidavit constituting a report of sale, which was filed with the court. In each case, the auctioneer affiant stated: "I conducted a judicial sale of property which is the subject matter of this foreclosure action." He further stated that "There were/was 1 potential bidding party(ies) in attendance, including myself, who bid on behalf of the mortgagee." Each report of sale thus showed that he was acting both on behalf of the court and on behalf of the plaintiff, who was not present.

The auctioneer testified that the procedure in these cases was identical to those in nearly all the sales he has conducted. He has been licensed as an auctioneer since 1988. The number of foreclosures increased dramatically in conjunction with the financial crisis, and the auctioneer estimates that he currently conducts 30-40 foreclosure sales per month in Vermont. He initially described himself as working on behalf of plaintiffs and their attorneys, and he sees himself as being paid by plaintiffs.[4] He also stated that he worked for the court, and he commented that his role can be confusing. When asked about the difference between judicial and non-judicial sales, he said that there was no difference and that he conducts all sales the same way.

He testified that the terms of the notice of sale govern for a particular sale, and that he follows the notice of sale's terms. The auctioneer described that the procedures that took place in these sales are the same as for all sales. He receives an email from a paralegal in the office of the plaintiff's attorney asking him to book a date for a particular case, which he does and responds by email. In the Bank of New York Mellon v. Campbell case, Plaintiff's attorney sent him a letter on September 27, 2012 enclosing the Notice of Sale for a sale date of November 29, 2012 and stating planned publication dates. The letter also states, "Please plan to handle this foreclosure as auctioneer for The Bank of New York Mellon FKA The Bank of New York, as Trustee for the Certificateholders, CWABS, Inc., Asset-Backed Certificates, Series 2007-10." There is a parallel provision in the letters from plaintiff's attorney to the auctioneer in the three other cases.

Approximately two days before the sale, he receives an email confirming that the sale is to proceed. He also receives an email with "bidding instructions" from the plaintiff's lawyer. These include a cover sheet with instructions of the amount of the bid

---

[4] Under the statute, the expenses of sale, including the auctioneer's fee, are paid out of the proceeds of the sale. If a plaintiff is the successful bidder such that no cash actually changes hands, it is the plaintiff who is likely to send payment to the auctioneer.

to enter on behalf of the plaintiff, a blank purchase and sales agreement, and a blank report of sale form to be filled out following the sale. He is instructed to accept no bid less than the plaintiff's bid. In all four of the cases, he was given a specific bid to enter on behalf of the plaintiff.

In the case of Bank of New York Mellon v. Campbell, the bidding instructions letter included the following:

"Please enter maximum bid of **$387,450.00**. Please state [sic] bidding at lowest allowable by state and, if competitive bidding is engaged bid in increments of $1000.00 up to the maximum bid.
. . .
"**UNDER NO CIRCUMSTANCES IS THE PROPERTY TO BE SOLD TO A THIRD PARTY FOR LESS THAN $387,450.00.**
. . .
"If there are any issues or questions that arise at the sale, please contact us immediately."

The bidding instructions letters from plaintiff's attorney to the auctioneer in the three other cases include the same provisions.

The auctioneer goes to the property location at the appointed time for the sale. Usually, no one attends on behalf of the plaintiff. In the past, an attorney for the VHFA used to come to sales in its cases, but has not done so recently. Sometimes in the past, an attorney representative from a plaintiff came to the sale, and brought bidding instructions, which the auctioneer used in conducting the sale. No one attended on behalf of the plaintiff in these four cases.

If anyone else appears at the time of sale and seeks to bid, he "qualifies" the bidders based on the content of the notice of sale. If the notice of sale requires a cash deposit, as in these cases, he makes sure a bidder can pay it before allowing the bidder to participate.

If the notice of sale requires proof of financing for the purchase, as in all four of these cases, he requires proof of sufficient credit for the difference between the amount of any deposit and the amount of the bid, but this is only needed if the amount of the bid is going to be greater than the plaintiff's bid. Sufficient proof is a letter from a bank stating that there is credit or a financing commitment large enough to cover the bid. He gave an example of a sale in which the plaintiff's bid was $128,500 and proof of financing ability was required. The proof of financing was a bank commitment letter for an amount lower than $128,500 (and also included conditions), so the bidder was not qualified to submit a bid. He has been told by several attorneys that a bank statement is sufficient proof of credit. He takes his direction from the plaintiff's attorney regarding what is sufficient to show proof of financing ability.

4

Sometimes he receives an email or a phone call from a plaintiff's representative telling him that the sale is to be cancelled. He knows that it can be for a variety of reasons, such as bankruptcy or a payoff or settlement, but he is not told the reason. He accepts that the sale is to be cancelled without knowing the reason. Sometimes he receives an email or phone call telling him that the sale is to be postponed; again, he is not told the reason. When that happens, he goes to the location at the date and time of sale and announces that the sale is postponed to a new date and time.

Sometimes he is sent bidding instructions by a plaintiff's attorney, and then is told by telephone that the amount of the bid is incorrect, and that "you need to bid such-and-such an amount instead." When that happens, he requests that the instruction to bid a different amount be put in writing, and he follows the instruction.

Once bidders are qualified, he shows them the purchase and sales agreement and tells them that they will be required to sign it if they are the high bidder. The form of purchase and sales agreement used in these four cases did not include the name of the plaintiff. It is entitled "Purchase Agreement" and uses the term "Transferor" in the body of the document but otherwise does not name the plaintiff. It provides for the "Purchaser" to sign the document, and, in parallel layout, provides for it to be signed:

"By:_____
          [Name of auctioneer]
          Agent for Transferor"

The same form was used in all four cases.

The auctioneer opens the bidding with the plaintiff's bid. He has been instructed not to accept any bids lower than the plaintiff's bid, and does not do so. He does not use the terms of the bidding instructions letter that instruct him to start the bidding at the lowest allowable bid in the state and increase in increments of $1,000 to meet competitive bids up to the plaintiff's bid. Instead, he opens the bidding pursuant to the instructions not to accept any bid less than the 'not to be sold less than_____' provision in the bidding instructions letter.

In all four of these cases, there were no other bidders and no one present on behalf of the plaintiffs. All four bids were entered by the auctioneer on behalf of the plaintiffs in the amounts included in the pre-sale written instructions. In all four cases, he submitted a report of sale showing the properties were sold to the plaintiffs as high bidders for the amount of the instructed bids.

If a non-plaintiff bidder is the high bidder at a sale, the auctioneer requires that person to sign the purchase and sales agreement. No one is present from the plaintiff to sign on behalf of the plaintiff or require the high bidder's signature; the auctioneer does that pursuant to the instructions that he has received. Assuming he signs the form provided to him by plaintiff's attorney, the auctioneer signs the form as "Agent for Transferor."

5

Analysis

The issue is whether the manner in which the sales were conducted is consistent with requirements of law. More specifically, is it permissible for an auctioneer[5] to set a minimum bid at plaintiff's direction, enter a bid on behalf of an absent plaintiff pursuant to pre-sale instructions, determine financial ability to pay a bid price as a precondition for a bidder to participate based on instructions from the plaintiff, require a successful bidder to sign a purchase and sales agreement, and sign such agreement as agent for a plaintiff?[6]

After judgment and the expiration of the redemption period, it is the plaintiff's attorney who is responsible for initiating the sale process by engaging an auctioneer and preparing, serving, and publishing the notice of sale. It is the auctioneer who is responsible for conducting the sale and preparing the report of sale. Then the plaintiff's attorney files a motion for confirmation. It is at that time that the court reviews what has occurred and determines whether all legal requirements have been met so that the sale can be confirmed and title can transfer. The court also then issues an order for the disposition of the sale proceeds. Thus, accountability for compliance with legal requirements takes place at the time the court considers the motion for confirmation.

The legal requirements are established by statute (currently Title 12, Chapter 172, Subchapter 3; previously Chapter 163, Subchapter 6) and applicable case law. Because statutory provisions on the conduct of sale are not detailed, and the case law is not readily available to non-attorney auctioneers, it may be difficult for both attorneys and auctioneers to determine the legal requirements. It is the function of the court at the time of confirmation to address such issues. These cases provide the opportunity to review procedures in common use and analyze compliance with legal requirements.

The rule is well established in Vermont that an individual conducting a judicial sale cannot also "act as the agent, with full discretionary power, of an absent person in the purchase of property." *Caswell v. Jones*, 26 A. 529, 530 (Vt. 1893). In that case, the sheriff conducted a sale and bid on behalf of an absent bidder who had given bidding instructions. The Court reversed a judgment that had treated the sale as valid.

It reasoned from established law that an individual conducting a judicial sale "cannot make a valid purchase for himself at such sale," *id.,*[7] and quoted an opinion in a

_____

[5] The word "auctioneer" in this analysis refers to any person who is qualified under the terms of a foreclosure judgment to conduct the sale, regardless of their title or qualifications.

[6] While not all of these circumstances occurred during the sales under review, there was detailed testimony that they occur frequently, and could occur when new sales are conducted in these cases. Therefore they are addressed to maximize compliance with legal requirements in the new sales.

[7] The Vermont Supreme Court has also held that a sheriff cannot sell property to his own agent at a judicial sale. *Downing v. Lyford*, 57 Vt. 507, 508 (1885). The Vermont Supreme Court first established the governing rule in *Woodbury v. Parker*, 19 Vt. 353 (1847), in which it states that the injunction against an officer having other than an independent role "should be stern and inflexible. To hold otherwise would be to place him under constent [sic] temptation to relax and violate his duty, in furtherance of selfish objects." *Id.*

6

prior case in which it had stated that an officer conducting a sale, "in addition to his character as a minister of the law, is regarded as a sort of a trustee and agent, both for the creditor and debtor. The two characters place him on higher and more responsible ground than a mere private trustee or agent." *Woodbury v. Parker,* 19 Vt. 353 (1847). The Court explained that an individual conducting a judicial sale cannot purchase the property as an agent for another entity because "the duty which he assumes as agent for the buyer is incompatible with the duty which he has assumed as agent for the seller." *Caswell v. Jones*, 26 A. at 530.[8] In other words, he has a duty of neutrality and fairness to both bidders and plaintiffs, as well as to the court, and cannot engage in conduct that compromises those duties.

While the holding in *Caswell v. Jones* is clear where the person conducting the sale has "full discretionary powers" on behalf of the absent bidder, the bidding instructions in these cases were more limited. Moreover, Vermont statutes establishing the procedure for judicial sales recognize that plaintiffs may exercise certain powers typically exercised by sellers who may contract with an auctioneer to hold a sale for their own benefit. *See, e.g.*, 12 V.S.A. § 4952(b) (allowing the plaintiff to publish the notice of sale); 12 V.S.A. § 4952(e) (authorizing the plaintiff to draft the notice of sale). One states that "the plaintiff shall sell the mortgaged property. . ." 12 V.S.A. § 4952(a). Thus an argument can be made that if an auctioneer has limited authority to bid for a plaintiff at a sale, an auctioneer should be able to act in limited ways on behalf of a plaintiff.

Despite some similarities between a plaintiff and a private property seller, the court's supervisory role in a judicial sale circumscribes the plaintiff's authority to within specific parameters, which limits it significantly compared with the discretionary authority of a private seller. The sale cannot occur without a court order, requiring the filing of a court case that subjects the proceeding to the court's equitable jurisdiction. The notice of sale must meet specific requirements (prior law 12 V.S.A. § 4532(f) applicable to this case; 12 V.S.A. § 4952(c) under current law), and the sale must take place on the terms in the order. 12 V.S.A. § 4946. The sale must take place at the property unless the court orders otherwise. 12 V.S.A. § 4953. The price is determined by the high bid. Further, the court must approve the sale, and ensure that all presale requirements for notice were met. 12 V.S.A. § 4954(a). Title to the foreclosed property does not pass until the court's confirmation order is recorded. 12 V.S.A. § 4954(b).

Accordingly, while a plaintiff in a judicial sale is a 'seller' in a limited sense, the role is severely limited and does not carry with it the discretionary authority held by a seller in a private contract sale. A judicial sale is a court's sale, and not a plaintiff's sale, i.e., not the sale of a private seller in which the auctioneer is agent of the seller by private contract. The auctioneer acts on behalf of the court and with an obligation of fairness

---

[8] While the case is old, there is a well-developed body of law both in Vermont and nationally regarding the principles of court oversight of judicial sales, and it has not changed over the years despite intervening statutory revisions to other provisions of foreclosure law. See the cases cited later in this Decision. Moreover, statutory changes have been made to Vermont foreclosure law over the years, including a major revision in 2012, without any changes that would alter the case law regarding conduct of judicial sales.

equally to both plaintiffs and bidders, as described in *Woodbury v. Parker*. As noted in the 1982 Reporter's Notes when V.R.C.P. 80.1 was amended and expanded to provide procedures for foreclosure by sale, the "'whole proceeding, from the beginning to the final confirmation of the reported sale' is 'under the supervision and control of the court,'" citing *Blossom v. Milwaukee & C.R. Co.,* 70 U.S. 196, 18 L. Ed. 43 (1866).[9]

The Vermont rule limiting the auctioneer from simultaneously acting on behalf of others is consistent with long-standing case law from other jurisdictions that has also not changed over time. *See, e.g.*, *Barber v. Barber*, 349 P.2d 198, 200 (Wyo. 1960) (confirmation of sale reversed due to irregularities in the conduct; Court noted that "it is universally agreed that a person participating in the handling of a judicial sale should not be a purchaser"); *Kellner v. Kellner*, 8 Neb.App. 316, 336 (1999) (plain error for trial court to authorize a sale conducted by purchaser; Court ruled that "[t]he purchaser [at a judicial sale] may not be the officer conducting the sale," and noted that "[J]udicial sales have a well-established procedure in common law."); *Jones v. Deposit & People's Bank*, 202 S.W. 907, 909-10 (Ky. App. Ct. 1918) (affirmed confirmation on basis of law that "[t]he general rule is that no person can become a purchaser at a judicial sale who has a duty to perform in reference thereto which is inconsistent with the character of purchaser, or who is so connected with the sale that his individual interest as a purchaser might be inconsistent with his duty").[10]

Other jurisdictions also acknowledge that an individual conducting a judicial sale cannot purchase the property as an agent for another entity. *See, e.g.*, *Faivret v. First Nat'l Bank in Richmond*, 160 F.2d 827, 831 (9th Cir. 1947) (stating that "an officer making a sale cannot, either directly or indirectly, become a purchaser, nor can he bid for the property for himself or as the agent of another," but Court upheld the sale despite irregularities because of conduct of the appellant ratifying the sale); *Coleman v. Malcolm*,

---

[9] While this court cannot locate the specific quote, the opinion of the Court includes a general description of the nature of judicial sales: "Judicial sales made under the decretal orders of courts of chancery, are also, in this country, governed substantially by the same rules, except that such sales are usually made by the marshal, or a master in chancery acting as an officer of the court, and are always regarded as under the control of the court, and subject to the power of the court to set the sale aside for good cause shown, or open it any time before it has been confirmed, if the circumstances of the case require the exercise of that power. Doubtless such sales are usually conducted under the advice of the solicitor of the complainant, and it is sometimes said that the solicitor, in all questions arising between the vendor and purchaser, must be considered as the agent of all the parties to the suit; but it is believed that the remark must be received with some qualification. Suppose it to be so, however, in a qualified sense; still it is true that the marshal or master, as the case may be, is the officer of the court, and that as such his acts and proceedings are subject to the revision and control of the court. In sales directed by a court of chancery, says Judge Story, the whole business is transacted by a public officer, under the guidance and superintendence of the court itself. Even after the sale is made, it is not final until a report is made to the court and it is approved and confirmed." *Id.* at 207.

[10] American Jurisprudence explains that "[a] court may designate or appoint any competent person as its agent to make the sale, but **it should not appoint a person to sell real estate in a judicial sale when that person is interested in the suit or the property**." *See* 47 Am. Jur. 2d Judicial Sales § 67. (emphasis added). An agent acting on behalf of a plaintiff qualifies as a person "interested in the suit or the property." It is telling that this is the only restriction American Jurisprudence identifies regarding a court's authority to appoint the auctioneer at a judicial sale.

28 S.E. 861, 862 (Ga. 1897) (nullifying a sale by a sheriff who bid for the creditor under authority to bid if the property sold for less than the amount of the creditor's execution, explaining that "[a] sheriff cannot purchase at his own sale, either for himself or as the agent of another"); *Trank v. Gysling*, 1904 WL 2693, at *1 (Pa. Com. Pl. 1904) (sheriff denied "poundage" on the $4,000 sale price where sheriff bid on property for a person who was not present but who had authorized him to bid $4,000 on his behalf, noting that a "sheriff entrusted with an execution should act only as the officer of the law without any other conflicting interests, either for himself or as an agent for others").

In the four cases at issue, the facts show that the auctioneer acted in a dual role: to the extent he followed the terms of the judgment and permissible terms in the notices of sale, he was acting on behalf of the court, but to the extent he followed the bidding and other instructions of the plaintiffs and acted for them at the sales, he was acting as an agent for the plaintiffs. This duality is inconsistent with the required principle of neutrality of the auctioneer. Specifically, the auctioneer:

- acted on instructions from each plaintiff in setting a minimum bid, and

- allowed the plaintiff to bid without being present by placing the plaintiff's bid himself on behalf of the plaintiff.

These acts compromise the neutrality that the law requires of the auctioneer and are not consistent with the well-established case law in Vermont and other jurisdictions nationwide that an auctioneer in a judicial sale represents the neutrality of the court, and cannot simultaneously further the interests of a particular bidder, including the plaintiff.

The requirement that an auctioneer cannot bid on behalf of a bidder who is not present is inherent in the requirement that the auctioneer must conduct the sale pursuant to the terms of a notice of sale, *see* 12 V.S.A. § 4946(a), and by statute the sale must take place on the premises at a specific date and place and time set forth in the duly noticed notice of sale. 12 V.S.A. § 4532 (g) (prior law applicable to these sales; 12 V.S.A. § 4953 under current law). If a plaintiff is not there to enter the bid, and a pre-communicated bid is entered on the plaintiff's behalf by the auctioneer, the auctioneer is acting on behalf of an absent bidder on the basis of a bid not submitted at the proper time and place. This results in different treatment for different bidders, contrary to the requirement that all bidders be treated equally except as provided by statute.[11]

The notice of sale does not authorize the auctioneer to accept a pre-sale bid from anyone in advance. The effect of the auctioneer acting on the plaintiff's instructions is to give the plaintiff an advantage not available to other bidders. While a plaintiff may bid at the sale, that fact does not mean that the plaintiff controls the sale. Being able to enter a

---

[11] The statute is specific where a plaintiff mortgagee may be treated differently. In 12 V.S.A. § 4953(c) of the current statute, a mortgagee plaintiff or designee may bid at the sale without meeting the requirements in the notice of sale applicable to other bidders. This court interprets this provision to mean that a cash deposit is not necessary; but not that the mortgagee is authorized to bid in advance or *in absentia* or set a reserve price. The statute specifies that the plaintiff may be a bidder "*at the sale.*" *Id.* (emphasis added)

9

bid that establishes a reserve price without having to send a person to be physically present represents an advantage not available to others in the marketplace, who may wish to do the same but are required to incur the transaction costs of attendance in order to participate at a sale.

This court cannot discern any provision of either statutory or case law that supports allowing a plaintiff to set a reserve price or minimum bid prior to the commencement of bidding. The statutory provisions are designed to accommodate the consequences of the successful (highest) bid, whether it is higher or lower or the same as the amount due the plaintiff. They do not specifically authorize either the plaintiff or the auctioneer to set a reserve price. The law requires that the property be sold "in accordance with this section," 12 V.S.A. § 4952(a). The "section" requires bidding and requires the sale to take place on the premises[12] (unless otherwise ordered by the court). These terms are not consistent with allowing the plaintiff to either bid without being present, or preset a reserve price.

An argument may be made that without the ability to set a reserve price, the property may sell way below its value—e.g., it may be that the only bidder on a property the plaintiff thinks is worth $60,000 offers $9,000. However, a plaintiff has the opportunity to protect its interest in several ways:

- First and simplest is to send a representative to the sale to bid on the plaintiff's behalf. It may increase cost, but it is necessary for several reasons: for the sale to take place at the time and place designated, for plaintiff to participate as a bidder on equal terms with all other bidders, and for the neutrality and integrity of the judicially supervised sale process to be maintained.

- Second is to seek strict foreclosure if the property is worth less than the amount due. Again, it may increase cost to prove that there is no equity, which is required to qualify for a strict foreclosure, 12 V.S.A. § 4941(c), but it assures the plaintiff of acquiring control over the property at a value known to the plaintiff.

- Third is to accept a deed in lieu of foreclosure and hold a private sale. In sales such as those at issue here, it is very rare for plaintiffs to seek a deficiency judgment. In many cases, a defendant has offered a deed in lieu early on in the foreclosure process which a plaintiff declines to accept for its own reasons, yet the plaintiff enters a bid at a judicial sale through the auctioneer, as was done in these cases, and then declines to pursue deficiency. This outcome has the same effect as a deed in lieu except that there is additional court process, delay, and perhaps resulting cost for the defendant in maintaining the property for a longer period of time, in addition to the risk that interest continues to

---

[12] This is not required in a non-judicial foreclosure sale.

10

accrue and the plaintiff may decide to seek a deficiency judgment. In such cases, economic efficiency, as well as fairness to cooperating defendants, would be promoted by plaintiffs taking a deed in lieu of foreclosure and selling the property privately.[13]

With these available means of protecting their interests,[14] plaintiffs cannot legitimately argue that fairness to them compels a compromise of the fundamental principles that all bidders at a judicial sale are to be treated equally and that the auctioneer is required to maintain neutrality with respect to all bidders and require all bidders to be present at the time and place of the sale and enter bids on their own behalf.

An argument may also be made that these sales should be confirmed because there has been no harm. For example, in these four cases, no one has opposed confirmation and no individuals can be identified whose interests have been prejudiced, as plaintiffs have waived any claims for deficiency judgments, resulting in dismissal with prejudice of any liability of defendants beyond loss of the property. It is, however, the court's responsibility, at confirmation, to ensure that the integrity of this judicially supervised process is maintained, and the way of doing this is to deny confirmation where the requirements of a fair and legal process have not been met. Denial of confirmation of substandard sales promotes future compliance, thereby assuring that all sales are conducted in conformity with required legal standards.

Moreover, while no individual harm is apparent in the facts of these four cases, there is likely a cumulative effect of the fact that 30-40 foreclosure sales take place every month in Vermont on the terms set forth in the findings of fact. If prospective homeowners, investors, defendants, or others interested in purchasing at foreclosure sales know that the plaintiff institutions routinely set a minimum price without being present and rely on the auctioneer to act as their agent, then that fact probably has an effect on the likelihood of potential buyers participating in the market. Judicial sales will be perceived as sales in which the plaintiffs, and not the court, are in charge. Thus, it is reasonable to expect that the result of a failure of the court to monitor compliance with the legal requirements of judicial sales has a chilling effect on market activity on the one hand, and, on the other, gives advantages to plaintiffs in the form of influence over terms and reduced costs not available to other interested buyers.

The court is aware from motion practice that plaintiffs sometimes file motions seeking to cancel or postpone an already-noticed sale on the grounds that they have not

---

[13] In New York Bank Mellon v. Campbell, the court granted plaintiff's motion to delay the sale to give the parties time to do a deed in lieu of foreclosure, which did not happen. The plaintiff initially indicated it would pursue a deficiency judgment but withdrew the request just before seeking confirmation, resulting in dismissal with prejudice of any deficiency claim. Mr. Campbell's only question at the hearing was how the plaintiff determined the amount of the bid it entered.

[14] A plaintiff also has the option of pursuing a deficiency judgment if it believes the high bid was unreasonably low, but this would be unnecessary if the plaintiff had sent a representative to the sale to enter a bid at the price it wishes to bid.

11

yet prepared their bid. No other person seeking to bid at a judicial sale would have access to file a motion to seek such relief. The court is also aware that plaintiffs sometimes cancel (or postpone) sales for the same reason without filing a motion. Since it is the auctioneer's job to conduct the sale on behalf of the court once the sale has been properly noticed, the auctioneer should not cancel or postpone unless he knows and is satisfied that the reason for a cancellation or postponement is authorized by law, and that statutory time limits and other requirements are observed. Otherwise, if the auctioneer simply takes the plaintiff's direction to cancel or postpone, he is acting for the benefit of the plaintiff without knowing whether he is upholding legal requirements, which he is obliged to do on behalf of the court.[15] Again, his role is to carry out the sale on behalf of the court rather than on terms convenient for the plaintiff as bidder.

For the foregoing reasons, the motions for confirmation in these four cases are denied. Plaintiffs are required to initiate new sales to be conducted consistently with this Decision. In order to assist plaintiffs' counsel and the auctioneer in conducting new sales that are likely to be confirmed, the court will address practices about which there was testimony, even though they did not occur at the time of the sales that took place in these four cases. They are pertinent if, at the new sales, there is a non-plaintiff who wishes to bid.

The evidence showed that where a non-party appears at the sale and seeks to bid, the auctioneer accepts instruction from plaintiffs to qualify bidders as to their credit-worthiness by reviewing bank statements or financing commitment letters. The instructions are sometimes partially contained in the notice of sale, which states, in these cases: "Proof of financing for the balance of the purchase to be provided at the time of sale." Such instructions are also given in writing or orally to the auctioneer in the form of what type of documentation is acceptable to show credit worthiness. This raises the question of whether it is permissible for the notice of sale prepared by plaintiffs' attorneys to include as a term of sale that only persons who meet certain credit qualifications will be permitted to bid.

In 2009, after the financial crisis had precipitated a huge increase in the number of foreclosure cases filed in the civil courts and it became apparent that foreclosure judgments were being prepared by attorneys and issued by judges with widely varying terms, the Civil Division Oversight Committee of the Vermont Judiciary (the "Committee")[16] analyzed the terms in various versions of foreclosure judgments and developed a recommended standard form of Judgment of Foreclosure by Judicial Sale with terms that were consistent with statutory requirements and represented an equitable

---

[15] Under 12 V.S.A. § 4953(b) (current law), adjournments are allowed for up to 30 days without further court order or new publication or service as long as certain proclamation and service requirements are met. An adjournment for a period longer than 30 days requires either agreement of the mortgagor and mortgagee or court order.

[16] The Committee operates under a Charge and Designation of the Vermont Supreme Court and includes judges, clerks, administrators, attorneys, and a liaison Supreme Court Justice. The undersigned has been Chair of the Civil Division Oversight Committee since its organization began in 2006.

12

balance of the interests of plaintiffs, defendants, and bidders.[17]  The Committee obtained extensive input from attorneys representing both plaintiffs and defendants about terms affecting sales, specifically, terms that would be included in the judgment that would then carry over to be included in the notice of sale.  Attorneys noted that it was important that bidders at judicial sales be persons with a credible ability to make a serious bid, and have reasonable financial capacity to complete a purchase; otherwise, the process would not succeed in providing a fair opportunity to maximize the benefit to both plaintiffs and defendants in an efficient manner.

In recognition of this legitimate interest, the Committee included in its recommended form of judgment two provisions that are not provided for explicitly in the statute, but were deemed by the Committee to be consistent with and reasonable in relation to the overall statutory purpose: a requirement that a bidder at a judicial sale pay the auctioneer a deposit of at least $10,000 or 10% of the bid, whichever is greater, and a provision that the plaintiff is authorized to require a bidder to sign a purchase and sales agreement with the plaintiff.  Without such provisions, persons could make ill-considered bids and walk away without completing the purchase and without facing any consequences for having wasted the time and resources of plaintiffs, defendants, the court, and other bidders.  Some attorneys advocated requiring higher deposits or more demanding demonstrations of credit-worthiness.  After analyzing alternative proposals, the Committee determined that additional requirements, beyond those approved, went beyond terms that struck a reasonable balance between the interests of plaintiff creditors and the purpose of a judicial sale in equitable foreclosure proceedings, and declined to adopt them.[18]

This court will follow the standards adopted by the Committee and confirm sales made pursuant to a notice of sale that includes the recommended provisions of the Committee, but will not confirm sales where the notice of sale includes additional preconditions to qualification for bidding unless they are specified in the judgment.  The additional terms appear to inherently involve plaintiffs or their representatives giving guidance to the auctioneer, and thus have the effect of making the auctioneer an agent of the plaintiff in reviewing credit worthiness of potential purchasers and making decisions for the benefit of the plaintiff which exclude some persons from even being able to participate at a judicial sale.  Where such terms were not authorized in the judgment but were included in the notice of sale, they place the auctioneer in a role that is inconsistent with his or her obligation of neutrality in acting on behalf of the court.  They contribute to a subtle conversion of a judicially supervised sale into a sale with the characteristics of a

---

[17] After the Legislature substantially revised the foreclosure statute in 2012, the Committee revised the recommended form in accordance with the statute's revisions.

[18] An additional provision that the Committee approved and included in its recommended form is that a plaintiff who makes a bid need not pay the $10,000 or 10% deposit at the sale.  This is reasonable, as it would not make sense to require a plaintiff who has an outstanding loan that is unpaid to front additional cash in order to bid at the sale.  This is now in the current statute at 12 V.S.A. § 4953(c).

private sale in which the auctioneer acts as plaintiff's agent to exercise discretion on behalf of the plaintiff in limiting eligibility to bid.[19]

The judgments in these cases authorized the plaintiffs to require a successful bidder to undertake a contractual obligation to complete the purchase by executing a purchase and sales agreement. The effect is to give the plaintiff a contract-based private cause of action against the high bidder in the event the bidder refuses to complete the sale. While the Committee approved the inclusion of such a term in the recommended form of judgment,[20] that does not mean that the auctioneer's role includes the obligation to require the high bidder to execute such a contract for the benefit of the plaintiff. When the auctioneer does so, he is acting on behalf of and for the protection of the plaintiff, and not on behalf of the court or with neutrality to both plaintiffs and bidders. The plaintiff has the opportunity to appear at the sale through a representative and obtain an executed contract on its own behalf.

Vermont trial courts have considerable responsibility in upholding standards of sales and other aspects of foreclosure cases, as the opportunity for appeal is limited, 12 V.S.A. § 4939, and rare. As recognized by a three justice panel of the Vermont Supreme Court in an unpublished decision, judicial sales must be "procedurally sound" and are subject to court oversight. *Catamount/Infill Springfield, LLC v. UPS Capital Bus. Credit*, 2007 WL 5319750, at *3 (Vt. Mar. 2007).

Allowing the auctioneer discretion to limit access to bidding on any terms other than those included by the court in the judgment and incorporated in the notice of sale would be inconsistent with the principles of judicial sale law reflected in case law regarding altering the terms of a judicial sale. *See, e.g.*, *Quinn v. S.S. Jian*, 235 F. Supp. 975, 977 (D. Md. 1964) (explaining that "the officer by whom the sale is conducted may not depart from or add to the terms set forth in the order of sale," the Court reviewed the officer's timing of accepting the deposit and ruled that it did not have the effect of "converting it into a private sale"[21]); *Fine Acres, Inc. v. Whitehurst*, 206 Va. 66, 69 (1965) (ruling that the commissioner could not depart from the judicial order and noting that the court and not the commissioner is the real seller at a judicial sale and the individual conducting a judicial sale "is merely the ministerial agent of the court and the medium through which the purchaser makes an offer of purchase to the court."); *Frank Nat'l Bank v. DeGiacomo*, 253 N.Y.S.2d 819, 821 (N.Y. Sup. Ct., Nassau County 1964) (stating that the individual conducting a judicial sale "may not by his terms of sale limit

---

[19] In concept, there may be cases which it would be justifiable to require some level of credit-worthiness as a qualification for bidding. There does not appear to be any reason why a court could not choose to include such authorization in a specific judgment in response to a motion. In residential property sales, such as in these cases, the Committee's recognized terms provide a reasonable level of protection for plaintiffs.

[20] "Plaintiff is authorized to require the purchaser to sign a Purchase and Sales Agreement." This term is in the Judgments in all four of these cases.

[21] The Court began its analysis by stating that the "applicable principles" regarding judicial sales "are clear, although most of the authorities are of ancient vintage." *Quinn*, 235 F. Supp. at 977.

the scope of the judgment, lessen the number of prospective bidders, diminish the amount of possible bids, or interfere with equities established by the court").

In summary, to aid in identifying provisions and practices that will result in confirmation of the new sales to be held in these four cases and in other cases that come before this court, the court notifies counsel that the following guidelines will be applied by this court in reviewing motions for confirmation:

- The notice of sale shall not include requirements or conditions limiting bidders' qualifications to bid other than those set forth in the judgment.

- An auctioneer is not authorized to enter a bid on behalf of a plaintiff or any absent bidder. A plaintiff or other bidder who seeks to enter a bid must send a representative to bid on the plaintiff's behalf.

- An auctioneer is not authorized to require execution of a purchase and sales agreement by a high bidder and/or execute a purchase and sales agreement on behalf of a plaintiff; a representative of the plaintiff who appears at the sale may do so.

- If there has been a cancellation or postponement of a noticed sale, the auctioneer should describe the circumstances and the reason in the report of sale with sufficient information so that the court can determine that legal requirements were satisfied.

Under a statutory change that went into effect as a result of the 2012 amendments to Vermont foreclosure law, confirmation can take place without a court hearing. 12 V.S.A. § 4954(a). It is the hope and expectation of the undersigned to be able to grant motions for confirmation without hearings in order to maximize efficiency for both the parties and the court, and only hold hearings where there is an issue that calls for explanation. In order to do that, reports of sale and supporting material filed with motions for confirmation will need to be complete and well-organized, and should include sufficient facts to provide assurance that the above guidelines have been met.[22]

For example, it would be helpful if the report of sale included the following information:

- The names of persons present to bid and on whose behalf they entered a bid (e.g., showing that a representative of the plaintiff or any other bidder were physically at the sale on the time and date and on whose behalf a bid was entered);

---

[22] It is recommended that motions for confirmation track the organization of the Confirmation Checklist prepared by the Committee for the convenience of lawyers, judges and clerks in order to expedite court review and maximize the likelihood of approval of confirmation without a hearing. See https://www.vtbar.org/UserFiles/files/Webpages/Attorney%20Resources/foreclosure/forms/Foreclosure%20Confirmation%20Checklist%20April%202013%20%284%29.pdf

- Whether a plaintiff's representative was present and required the high bidder to sign a purchase and sales agreement, and the name of the person who signed it on behalf of each party, including the plaintiff; and

- A description of any postponement or cancellation that took place from the time the sale was first noticed and the reason for it.

The court is aware that many sales that have taken place in the manner of the four at issue here have previously been confirmed. This decision is not intended as a basis for undoing confirmations of previously confirmed sales, but to define acceptable practices for conducting future sales. Its effect is intended to be prospective only.

<u>ORDER</u>

The motions to confirm these four sales are *denied*. Plaintiffs shall conduct new sales within 90 days.

Dated at Woodstock, Vermont, this 2nd day of December, 2013.

Honorable Mary Miles Teachout
Superior Court Judge